JAMES M. STRAUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THEO. A., JR., AND JEAN M. STRAUB (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

TECLA M. STRAUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21067, 21068, 21069. Promulgated September 1, 1949.

*Walter W. McVay, Esq.*, for the petitioners.
*George C. Lea, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax for 1944 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| James M. Straub | 21067 | $415.67 |
| Theo. A. Jr. and Jean M. Straub | 21068 | 206.86 |
| Tecla M. Straub | 21069 | 7,535.13 |

One issue common to all is whether a deduction of $1,000 in each case is proper under section 23 (a) (2) of the Internal Revenue Code as an

ordinary and necessary expense of the management of property held for the production of income, or whether, as the Commissioner determined, it was a capital expenditure, a part of the cost of shares of stock purchased. The facts have been stipulated.

Theo. A., Jr., and Jean M. Straub are husband and wife. Theo. A., Jr., and James M. àre brothers, sons of Tecla and her deceased husband, Theo. A. Straub. The petitioners filed returns for 1944 with the collector of internal revenue for the twenty-third · district of Pennsylvania.

The Fort Pitt Bridge Works is a corporation in which the Straubs have held a large minority block of stock for a number of years. James M. was president and a director on February 26, 1944. His salary was $25,000. Other members of his family had been officers or directors from the inception of the corporation. The stock and bonds of the corporation were held as follows on February 26, 1944:

| Owners | Stock | Bonds |
|---|---|---|
| | *Shares* | |
| James M. Straub | 6,806 | $42,900 |
| Jane C. Straub, his wife | 27 | |
| Theo. A. Straub, Jr | 6,030 | 52,300 |
| Tecla M. Straub | 6,034 | 40,400 |
| Other members of the immediate family | 5,766 | |
| Public | 45,337 | 348,400 |
| Total | 70,000 | 484,000 |

The board of directors, as previously constituted, was reelected at an annual meeting of the stockholders on February 26, 1944. The board of directors then, without notice to James M. Straub, elected him vice president, at a salary of $25,000, and elected another director president.

The three petitioners (excluding Jane) then agreed to purchase additional stock in the corporation, sharing the expenses equally, to increase their combined voting power so that James M. could be reinstated as president and the "Straub interests" could be protected and their income preserved.

They employed a broker of New York to buy the stock. He purchased 10,755 shares during the period March 23 to May 29, 1944, through various markets without divulging the names of his principals. He was paid $3,000, in addition to a usual commission of $.125 per share, for his services in purchasing the stock. Each of the three principals paid his share of the bill for the transactions in 1944.

A special meeting of the stockholders was held on July 12, 1944, at which the four directors who had replaced James as president were not reelected and thereafter the new board of directors reinstated James as president.

The petitioners concede that the regular commission of $.125 per share was a part of the cost of their stock, but they deducted $1,000 on each return representing individual shares of the $3,000 paid to the broker for buying the 10,755 shares. The Commissioner disallowed those claimed deductions, explaining that they were capital expenditures.

The Commissioner cites cases for the well established principle that amounts spent in acquiring stock, a capital asset, are not deductible as expenses under any provision of section 23 (a), but are capital expenditures forming a part of the cost of the stock, *Helvering* v. *Winmill*, 305 U. S. 79; *Spreckels* v. *Helvering*, 315 U. S. 626; *Davis* v. *Commissioner*, 151 Fed. (2d) 441; certiorari denied, 327 U. S. 783; *Bowers* v. *Lumpkin*, 140 Fed. (2d) 927; certiorari denied, 322 U. S. 755; *Hutton* v. *Commissioner*, 39 Fed. (2d) 459; *W. F. Bavinger*, 22 B. T. A. 1239, and this rule was not changed when section 23 (a) (2) was added, *Bowers* v. *Lumpkin, supra.* The petitioners have failed to demonstrate that the $3,000 commission paid to the broker for acquiring the 10,755 shares was different in principle from the $1,344.375 paid him as a usual commission at the rate of $.125 per share purchased or that it is deductible under 23 (a) (2). These shares, apparently, gave the Straubs the control which they sought and they may have helped to protect their former investment, but the entire cost of the newly acquired shares is, nevertheless, a capital investment and not an expense to be deducted from current income under section 23 (a) (2).

Another issue is presented in the case of Tecla M. Straub. She and her two sisters owned equally 699/800 of the stock of Charles Moser Co. That corporation was indebted to a Cincinnati bank in the amount of $70,317.78 as of October 16, 1933. The three sisters loaned the corporation $72,000 on its notes to pay off the indebtedness to the bank. Tecla loaned $10,500 of the total. The debt to the three sisters was increased to $76,581.92 by 1940. The debtor started to liquidate in 1943 and paid all of its obligations in full except the debt to the three sisters. Tecla sustained a loss of $9,545.78 on this debt in 1944. She claims the right to deduct the entire amount as a bad debt under section 23 (k) (1). The Commissioner has held that it was a "non-business debt" to which section 23 (k) (4) applies. He treated it as a short term capital loss.

Section 23 (k) (1) does not apply, in the case of an individual, "with respect to a non-business debt, as defined in paragraph (4) of this subsection." Paragraph (4) provides that a nonbusiness debt becoming worthless shall be treated as a short term capital loss and defines "non-business debt" as "a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss

from the worthlessness of which is incurred in the taxpayer's trade or business." The petitioner does not contend that the debt was evidenced by a "security" within paragraph (3). The parties have stipulated that "at no time during the period here in question did Tecla M. Straub engage in any business." That stipulation makes the latter part of the above definition inapplicable, with the result that this debt was a nonbusiness debt. Thus the Commissioner did not err.

*Decisions will be entered for the respondent.*