AGNES I. FOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 18802.   Promulgated June 15, 1950.

*Harold Wisan, Esq.*, for the petitioner.

*J. Richard Riggles, Jr., Esq.*, and *Joseph Lawless, Jr., Esq.*, for the
respondent.

OPINION.

TURNER, *Judge*: As to the exact nature and character of petitioner's claim, her petition is indefinite. Her allegations of error are, first, that the respondent erred in determining a deficiency against her for 1944 and, second, in adding back to net income $15,000 disallowed as a "bad debt." In her allegations of fact she generally recited the circumstances of the loan of securities and of the guaranty of her husband's account, the payments made by her under her guaranty prior to the taxable year, and the payment of the $15,000 here in question. She alleged that she "gave that guaranty because she had confidence in the trading ability of said Wm. J. Fox and believed that she would realize a substantial profit from his management of his account." In her prayer she has asked that the Court hear the proceedings and determine that the "item of $15,000 claimed in the return was properly allowable under section 23 of the Internal Revenue Code." There is no allegation as to the subsection of section 23 under which it is claimed the deduction is allowable. Upon brief petitioner now takes the position that the amount in question constituted a loss incurred in a transaction entered into for profit; that it should be allowed in full under section 23 (e) (2) of the Internal Revenue Code [2] and should not be limited as a nonbusiness bad debt under section 23 (k) (4), *supra*. She no longer claims, as was alleged in her petition, that she gave the guaranty because of her confidence in the trading ability of Fox and

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
(1) if incurred in trade or business; or
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; &ast; &ast; &ast;

believed that she would realize substantial profit from his management of the account, but now argues that the giving of the guaranty was a transaction entered into for profit in that it was given to prevent the loss by her of the securities previously loaned to her husband.

The respondent takes the position that the loaning of the securities by petitioner to her husband in the first instance and the later guaranteeing of his account were gratuitous acts of a wife in behalf of her husband and negative any thought or idea of a transaction entered into for profit, and on the basis of allegations in an amended answer further contends that in such circumstances there was no resulting indebtedness to her on the part of her husband and consequently no amount is allowable as a bad debt deduction.

At the outset it may be noted that we do not have in this case any claim for the deduction of a loss sustained by petitioner on the shares of stock loaned by her to her husband. If she has at any time claimed such a deduction, that claim was made in some prior year and we are given no facts or information with respect thereto.

Any claim that the securities were furnished by petitioner to her husband without intent that he should return them to her is, we think, without merit. Neither do we think that she intended that any amounts she might have to pay under the guaranty should be regarded as gifts. Petitioner was not making a gift to her husband, but rather was making him a loan of some of her securities and through the guaranty of his account a loan of her credit. There was a definite agreement for the return of the securities and, whether expressed in words or not, there was a legally implied obligation to reimburse her for any sums she might be required to pay under her guaranty. That the law implies a promise on the part of a principal debtor to reimburse his guarantor where the guarantor is forced to pay his debt or make good his default does not in our opinion require elaboration. For a full discussion of that legal principle see *Howell* v. *Commissioner*, 69 Fed. (2d) 447. See also *Thomas Watson*, 8 T. C. 569; *Alice du Pont Ortiz*, 42 B. T. A. 173; *D. W. Pierce*, 41 B. T. A. 1261; and *Daniel Gimbel*, 36 B. T. A. 539.

The tenor of petitioner's argument seems to be that the loss could not be a bad debt loss because there was no debt, and there was no debt because the debtor died some seven years prior to the payment by her under her guaranty of the particular $15,000 here in question, and not only was the debtor dead, but at the time of his death he was insolvent. The argument made goes to the worth and not to the existence of the debt or liability. Exactly the same argument was made by the Government in *Barnhardt-Morrow Consolidated*, 47 B. T. A. 590. The only difference is that in that case the debtor had been dead two years, while in this case he had been dead some seven years before the guarantor made the payment in question. We there pointed out

that no authority had been cited by the respondent for his claim that the obligation of the debtor was discharged by death and further that we were unable to find authority for such proposition. We also pointed out that the obligation was not one which adhered to the person and was incapable of being performed by another, but that, on the contrary, it was an obligation which survived and for which the estate of the debtor was liable, citing *Elliot* v. *Garvin*, 166 Fed. (2d) 278; *Brownfield* v. *Holland*, 63 Wash. 86; 114 Pac. 890. We took note of the fact that the estate was insolvent at the time the debt came into existence, namely, at the time the payment was actually made under the guaranty, and that when it did come into existence it was at that time worthless. We held that the petitioner was entitled to deduct the amount in controversy as a bad debt in the year in which the guaranty payment was made. See also *Thomas Watson, supra; Alice du Pont Ortiz, supra;* and *D. W. Pierce, supra.* As in *Barnhardt-Morrow Consolidated, supra,* the loss here was a bad debt loss.

Prior to the enactment of section 23 (k), limiting as to amount deductions for bad debts where the debts were nonbusiness debts, a taxpayer in a case such as we have here would not have been greatly concerned whether the loss be held to be a bad debt loss or a loss in a transaction entered into for profit. In either case he would have been entitled to deduct the full amount of his loss. Section 23 (k) (4) has been enacted, however, and by its provisions nonbusiness debts which have become worthless are not deductible in full, but are subject to the same limitations as in the case of a loss resulting from the sale or exchange of a capital asset held for not more than six months. It is the petitioner's contention not only that the loss here can not be a bad debt loss for the reasons argued and rejected by us above, but further that the loss is a loss incurred in a transaction entered into for profit and is deductible under section 23 (e) (2), *supra,* because the payment in question was made under a guaranty given by petitioner in the hope of eventually recovering the securities she had loaned to her husband, from which securities she hoped to receive and realize profits in the nature of dividends. In that connection it might be pointed out that some losses which admittedly are bad debt losses are much more readily seen to be the result or culmination of transactions entered into for profit than the transaction here, but that does not make them losses deductible under section 23 (e) (2) rather than under section 23 (k). Loans made for the sole purpose of earning interest might be suggested in contrast to the instant case, where the original loan was a loan of securities solely for the accommodation of her husband and there was no thought or intention on petitioner's part of receiving anything in return except the securities she had loaned.

Discussion also might be indulged in as to whether or not the fact that petitioner's original acquisition of the securities loaned would determine that any guaranty thereafter made which was designed to protect her interest would be a transaction entered into for profit because the original purchase or acquisition of the securities was for the purpose of making a profit and dominated the guaranty in that respect even though the loan of the securities themselves had no profit motive attached to it at all other than such satisfaction as she might receive from helping her husband. Cf. *R. W. Hale,* 32 B. T. A. 356. See, however, *Burdan* v. *Commissioner,* 106 Fed. (2d) 207, and *Evans* v. *Rothensies,* 114 Fed. (2d) 958, the court in the latter case pointing out that the purpose which motivated a transaction originally may change to the end that one which was entered into for profit might later become one not for profit, just as one which was not for profit originally might become a transaction for profit. Regardless of such considerations, however, we think that the answer is definitely indicated by the pattern of the statute. In section 23 (e) Congress made provision generally for the deduction of losses incurred in a trade or business and in transactions entered into for profit, whereas in section 23 (k) it has legislated particularly with respect to bad debt losses. In *Spring City Foundry Co.* v. *Commissioner,* 292 U. S. 182, the Supreme Court pointed out and held that the provisions allowing deductions for losses and those governing the deduction of bad debts were mutually exclusive and that a worthless debt was not deductible under the loss provisions of the statute. We have already shown that the loss here was a bad debt loss and the petitioner herself makes no claim that the liability under her guaranty of her husband's account was a liability incurred in a trade or business. See and compare *Tecla M. Straub,* 13 T. C. 288, and *Vincent C. Campbell,* 11 T. C. 510. The debt was a nonbusiness debt and, being worthless when it arose, see and compare *Eckert* v. *Burnet,* 283 U. S. 140, it was deductible by petitioner, subject to the limitations of section 23 (k) (4), *supra.*

To support her claim that the loss here was a transaction entered into for profit within the meaning of section 23 (e) (2) and not a bad debt loss under section 23 (k) (4), petitioner, among other cases, cites and relies on *Abraham Greenspon,* 8 T. C. 431; *Carl Hess,* 7 T. C. 333; and *R. W. Hale, supra.* The *Hale* and *Hess* cases are different and are distinguishable from the instant case in that the payments in those cases were part and parcel of contracts for the sale of stocks. In the *Greenspon* case there was a guaranty on the part of officer-stockholders of certain corporate debts and the items involved in the proceedings before us were payments made pursuant to those guaranties. We concluded that the losses there were not bad debt losses, but losses incurred within the meaning of section 23 (e). Our conclusions there

that on the facts in the case the losses were incurred in a trade or business or in transactions entered into for profit are not in question here. In view, however, of petitioner's reliance upon the *Greenspon* case and in the light of the conclusions reached in the instant case that the loss here is a bad debt loss and our reasons therefor, it should be noted that nothing said in the *Greenspon* case as the basis for the conclusion that the losses there were not bad debt losses is regarded as controlling here. Nor do the facts or what was said in *Frank B. Ingersoll*, 7 T. C. 34, suggest or indicate that we should here reach a contrary conclusion.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

––––––––––

ARUNDELL, *J.*, dissenting: There would appear to be no dispute that petitioner sustained an out-of-pocket loss of $15,000 when she made payment under her obligation as a guarantor. To be deductible, this out-of-pocket loss must *not be compensated for by insurance or otherwise* and must be (1) incurred in trade or business, or (2) incurred in a transaction entered into for profit, or (3) the result of a casualty or theft. Sec. 23 (e), I. R. C.

In effect, the majority opinion translates petitioner's loss into a nonbusiness bad debt by holding that petitioner was compensated for her loss by the claim that she then had over against the principal debtor, the estate of her deceased husband. Until petitioner made the payment in question, she possessed no right to reimbursement. Cf. *Eckert* v. *Burnet*, 283 U. S. 140. When payment was made, her husband had been dead for seven years, his estate had been found insolvent, and the executors of his estate had been discharged. It seems to me highly specious to hold that she then received a theoretical claim against his estate which "compensated" her for her loss. A similar problem was before us in *Abraham Greenspon*, 8 T. C. 431, where the guarantors were permitted to deduct the loss sustained on paying their obligations as guarantors, since the principal debtor was an insolvent defunct corporation from which recourse was impossible. The *Greenspon* decision does not appear to me to be satisfactorily distinguished by the majority opinion here.

If petitioner's payment is characterized as a loss for the reasons set forth above rather than as a bad debt, as the majority holds, the deductibility of the payment must depend upon whether the loss was incurred in a "transaction entered into for profit." This question has not been squarely met in the majority opinion.