KATE BAKER SHERMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26522. Promulgated July 18, 1952.

*Ralph L. McAfee, Esq.,* and *William J. Nolan, Jr., Esq.,* for the petitioner.

*William E. Murray, Esq.,* for the respondent.

750

**OPINION.**

HILL, *Judge:* Issues 1 and 2 are in reality a single issue and in this opinion will be treated as such. Petitioner as endorser guaranteed the debts of Sherrill Sherman, her husband, who had borrowed money and used the proceeds of the loan to provide working capital for a corporation, the stock of which was owned by the petitioner and Sherrill Sherman.

During 1944 and 1945 the FDIC liquidated certain collateral of the petitioner held by it and applied the proceeds in payment of the principal of the note of Sherrill Sherman identified as Asset No. 1939, which the petitioner had endorsed and guaranteed. These payments were in the amounts of $9,767.70 and $4,575.74, respectively.

In 1944 the petitioner had net long term capital gains of $825, no short term capital gains and no capital losses other than the amounts here in controversy. She treated the sum of $9,767.70 as a nonbusiness bad debt and claimed a short term capital loss under section 23 (k) (4)[1] of $1,825 in her 1944 income tax return. In her 1945 return she claimed a capital loss carry-over of $7,942.70 ($9,767.70 minus $1,825, the sum of the net long term capital gains for 1944 plus $1,000), plus the 1945 payment of $4,575.74 as a short term capital loss under the provisions of section 23 (k) (4).

When, as here, the endorser of a note is forced to answer and fulfill his obligation of guaranty, the law raises a debt in favor of the guarantor against the principal debtor. In short, the guarantor is subrogated to the rights of the creditor against the primary debtor. *Agnes I. Fox*, 14 T. C. 1160; *Warren Leslie, Sr.*, 6 T. C. 488. The petitioner bases her claim to a nonbusiness bad debt deduction on this theory, claiming debts by subrogation against Sherrill Sherman which were worthless in the years in which they arose due to his insolvency.

The respondent bases his opposition to the petitioner on this issue upon two grounds. First, the respondent argues that the sums in question do not constitute bona fide debts and, second, that assuming the existence of a debtor-creditor relationship the debts did not become worthless in 1944 and 1945. The respondent argues that the facts before us constitute a gift rather than a debt. He draws this conclusion from the close relationship between Sherrill Sherman and the petitioner. They were husband and wife. To support his conclusion the respondent relies upon *Estate of Carr V. Van Anda*, 12 T. C. 1158, where we said:

Intrafamily transactions are subject to rigid scrutiny, and transfers from husband to wife are presumed to be gifts. However, this presumption may be rebutted by an affirmative showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness. * * *

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions;

* * * * * * *

(k) BAD DEBTS.—

* * * * * * *

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

Applying the "rigid scrutiny" of the *Van Anda* case to the facts before us, we find that the petitioner had no intention of making a gift to Sherrill Sherman at the time she endorsed Asset No. 1939 or at the time she endorsed the original notes out of which Asset No. 1939 grew.

The respondent states that Sherrill Sherman never promised to pay the petitioner with respect to the sum in controversy. The respondent forgets that the obligation placed upon Sherrill Sherman by the petitioner's payments upon her endorsement of his note is not dependent upon a promise to pay but rather upon an obligation implied by the law. If Sherrill Sherman had expressly repudiated his obligation, his action would have been immaterial to the collection of the debt due and owing from him to the petitioner as the result of the payments made by her under her endorsement of his note. The obligation rests in a promise implied by the law. If we follow the respondent's argument we would have to find as a fact that at the time of making the endorsement the petitioner agreed to waive any rights against Sherrill Sherman which might arise out of his inability to pay his debt when due. The facts negative any such finding. The petitioner was no mere accommodation endorser. She stood to benefit substantially. Sherrill Sherman made the note in order to secure funds with which to provide working capital for Sherman Sales Company, Inc. The petitioner and Sherrill Sherman were the sole stockholders of that corporation. If the funds loaned by Sherrill Sherman to the corporation had been sufficient to secure its safe passage through the depression the petitioner would have benefited substantially.

To substantiate his theory of gift, the respondent also relies upon the fact that the petitioner never made a formal demand for payment against Sherrill Sherman. While under some circumstances this would be evidence of a gift, we do not think it important here. As will be pointed out shortly, Sherrill Sherman was completely insolvent during the years 1944 and 1945. For the petitioner to be entitled to a nonbusiness bad debt deduction under the provisions of section 23 (k) (4), it is not necessary for her to do a useless act.

As to the respondent's contention that the debts were not worthless in 1944 and 1945, our finding of fact is dispositive. Sherrill Sherman was completely insolvent at the time the debts arose in 1944 and 1945. Our finding is based upon the balance sheets submitted by Sherrill Sherman for the years 1944 and 1945 and upon the record as a whole.

The taxpayer is not required to be an incorrigible optimist. The mere possibility that Sherrill Sherman, a man of 62 years in 1945, might one day recoup his losses and regain financial stability is not enough to warrant the respondent's conclusion that the debts were not bad for the years in which the petitioner claimed her bad debt losses. The petitioner is entitled to a nonbusiness bad debt deduction in 1945

of $12,518.44, (the capital loss carry-over of $7,942.70, plus the 1945 payment of $4,575.74) to be treated as a short term capital loss under the provisions of section 23 (k) (4).

The third issue raises the question of the deductibility of certain claimed interest payments. Assets Nos. 1934, 1935, and 1936 held by the FDIC were notes made by the petitioner. They called for interest at the rate of 6 per cent per annum. In 1945 the FDIC liquidated certain of petitioner's assets which were held as collateral security for the payment of petitioner's debts, debited the collateral accounts and credited the interest accounts on these notes in the amounts of $357.32, $320.88, and $275.82, respectively. It would appear without question that the petitioner is entitled to a deduction of $954.02 under section 23 (b)[2] of the Code for interest paid. However, the respondent argues that this is not the case. He reasons that the petitioner's interest payments were not voluntary but were the act of the FDIC in liquidating her collateral and applying the sums mentioned above towards the interest account on her notes. We find this reasoning specious. Affirmative action by the debtor in the payment of interest is not necessary where in fact his assets are applied to the payment of interest. Cf. *Gertrude Rosenblatt*, 16 T. C. 100.

Further, the respondent argues that, since the petitioner and the FDIC were in dispute as to the amount of interest due on her obligations, the petitioner is not entitled to a deduction at the rate of 6 per cent which the FDIC collected but rather at the rate of which she contended was due, or 2 per cent. That the rate of interest was in dispute, we think, is immaterial. It is settled that a cash basis taxpayer is entitled to a deduction for amounts paid within the taxable year. Cf. *Chestnut Securities Co.* v. *United States*, 62 F. Supp. 574; G. C. M. 25298, 1947-2 C. B. 39. That in a later year not before this Court the FDIC made an adjustment in the rate of interest theretofore charged is also irrelevant. At any rate, as shown by the record, petitioner never recovered any amounts which she paid to the FDIC in years prior to 1946, the year of the adjustment.

Asset No. 1939 was made by Sherrill Sherman and endorsed by the petitioner. The interest rate thereon was at the rate of 6 per cent per annum. In 1945 the FDIC liquidated certain of petitioner's assets held as collateral security for the payment of her debts, debited the collateral account and credited the interest account of Asset No. 1939 in the amount of $192.14. The petitioner claimed an interest deduction in the amount of $192.14. The respondent disallowed the deduction on the ground that the interest paid by the petitioner was interest paid

[2] (b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer), the interest upon which is wholly exempt from the taxes imposed by this chapter.

754

on the indebtedness of Sherrill Sherman and hence nondeductible. In support of his position he relies upon *Chester A. Sheppard*, 37 B. T. A. 279, holding that interest payments made on the obligation of another do not meet the statutory requirement of interest deductions. However, this truism does not sustain the respondent's position here, for the payment made by the petitioner was upon her obligation. When the FDIC found it necessary to go against the petitioner on her endorsement the petitioner was obligated not only for the principal due on Asset No. 1939 but the interest due and payable as well. See *United States Fidelity & Guaranty Co.*, 40 B. T. A. 1010, 1019, 2 C. B. 113.

The petitioner is entitled to deduct the sum of $1,146.16 as interest paid during the taxable year 1945.

*Decision will be entered for the petitioner.*