PETER STAMOS AND CATHERINE C. STAMOS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39787. Filed July 14, 1954.

*Herbert M. Matties, Esq.*, for the petitioners.
*S. Jarvin Levison, Esq.*, for the respondent.

889

OPINION.

BLACK, *Judge:* On October 2, 1948, petitioner paid $3,000 in settlement of his guarantor's liability on various obligations of the corporation. At the time petitioner gave his guaranty he expected the corporation to prosper and did not contemplate that he would be called upon to make payment under that obligation. When petitioner made the $3,000 payment the corporation was insolvent and was not conducting business operations. His right of reimbursement against the corporation was in fact worthless. However, the corporation was still then in existence and was not dissolved until December 15, 1950.

Petitioner contends that the $3,000 payment is deductible from his 1948 gross income as a nonbusiness loss under section 23 (e) (2) of the Code.[1] Respondent argues that the payment may be deducted only as a nonbusiness bad debt under section 23 (k) (4) of the Code.[2] The

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

\*     \*     \*     \*     \*     \*     \*

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or   \*   \*   \*

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(k) BAD DEBTS.—

\*     \*     \*     \*     \*     \*     \*

(4) NON-BUSINESS DEBTS.—In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

two sections are mutually exclusive; if an item qualifies for deduction under section 23 (k) (4), it cannot then be deducted under the more liberal provisions of section 23 (e) (2). *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. The particular question to be resolved is whether a debt arose in favor of petitioner against the insolvent but still existent corporation when petitioner paid the $3,000. If it did then section 23 (k) (4) is the provision under which the petitioner must take his deduction.

Since the corporation was not dissolved until December 15, 1950, this case is distinguishable from those holding that no debt arose in guarantor's favor when the principal debtor was not in existence at the time the guarantor satisfied his obligation. *Abraham Greenspon*, 8 T. C. 431; *Frank B. Ingersoll*, 7 T. C. 34; *Fox* v. *Commissioner*, (C. A. 2) 190 F. 2d 101, reversing 14 T. C. 1160. In *George Aftergood*, 21 T. C. 60, our most recent case in point, we stated:

When a guarantor "is forced to answer and fulfill his obligation of guaranty, the law raises a debt in favor of the guarantor against the principal debtor." *Kate Baker Sherman*, 18 T. C. 746, 751 (1952). It does not matter that the obligation raised by the law was totally worthless when it arose. *Agnes I. Fox*, 14 T. C. 1160 (1950), revd. 190 F. 2d 101 (C. A. 2, 1951) ; *Barnhart-Morrow Consolidated*, 47 B. T. A. 590 (1942), affd. 150 F. 2d 285 (C. A. 9, 1945).

Other decisions supporting this position are, *inter alia*, *Shiman* v. *Commissioner*, (C. A. 2) 60 F. 2d 65; *Daniel Gimbel*, 36 B. T. A. 539; *D. W. Pierce*, 41 B. T. A. 1261; and *Leo L. Pollak*, 20 T. C. 376. We are aware of the recent reversal of the *Pollak* case, (C. A. 3) 209 F. 2d 57. However, after carefully reexamining the problem we respectfully decline to follow the Court of Appeals for the Third Circuit in its reversal of that case. Consequently, we hold that upon payment of the $3,000 by petitioner a debt arose running from the corporation to petitioner, that such debt was worthless when it arose, and that petitioner's deduction therefor may properly be taken only under section 23 (k) (4).

On January 6, 1949, petitioner paid $264.77 for legal expenses incurred in settling his aforementioned guarantor's liability on the corporation's obligations. There is no evidence that petitioner acquired a right of reimbursement against the corporation for those expenses. Petitioner contends that those expenses are deductible, in computing net income for 1949, either as an expense under section 23 (a) (1) (A) or 23 (a) (2) of the Code, or as a loss incurred in a "transaction entered into for profit" under section 23 (e) (2) of the Code, *supra.*

We think this case clearly falls within the ambit of our decision in *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214, affirmed on another point (C. A. 2) 116 F. 2d 642, certiorari denied 313 U. S. 588, in which we held that the taxpayer, who incurred, legal expenses in adjusting her guarantor's liability on bonds of a corporation in which

she was a stockholder, could deduct those expenses as losses on a "transaction entered into for profit" under section 23 (e) (2). In the instant case the guaranty itself was given by the petitioner to facilitate the purchase of the carnival which was to be run by the corporation in which petitioner was a stockholder, officer, and director. Petitioner entered the carnival venture, forming and investing in the corporation, because he thought he would prosper from it. Obviously, therefore, the guaranty was given in a transaction entered into for profit. See generally *Moses Cohen*, 44 B. T. A. 709, 713; *Carl Hess*, 7 T. C. 333. When petitioner paid the legal expenses in connection with the guaranty, the corporation was insolvent and his investment therein was worthless. Those legal expenses were paid for the sole purpose of reducing petitioner's liability under the guaranty. On these facts we think, as aforesaid, that *Marjorie Fleming Lloyd-Smith*, *supra*, is controlling and that petitioner is entitled to deduct the legal expenses under section 23 (e) (2).

Both petitioner and respondent have cited, in support of their arguments regarding the deductibility of the legal expenses, *Bingham's Trust* v. *Commissioner*, 325 U. S. 365, and *Lykes* v. *United States*, 343 U. S. 118. Those cases deal with the propriety of deductions for legal expenses under section 23 (a) of the Code. Since we have held that petitioner here is entitled to a loss deduction under section 23 (e) (2) it is unnecessary to consider the applicability of section 23 (a) to this issue.

We turn now to the final issue for consideration. The corporation owed the Federal Government admissions, withholding, and social security taxes. Because of its insolvency and the discontinuance of its operations it was unable to pay those taxes. At a conference held in December 1947, the official in charge of the local office of the collector of internal revenue told petitioner that he was personally liable, both civilly and criminally, for those taxes and that if they were not paid action would be taken to collect them. Petitioner's attorney, moreover, advised petitioner that he was civilly liable for the taxes. Solely as a result of what in effect was the internal revenue official's demand for payment of the aforementioned taxes, and petitioner's honest belief (corroborated by his attorney's advice) that he was personally liable for them, an arrangement was entered into whereby petitioner paid the collector installments totaling $6,355 in 1948 and $2,658.85 in 1949 on account of those taxes. There was never any reasonable possibility of petitioner's being reimbursed by the corporation for those payments.

Petitioner does not contend that he is entitled to deduct the payments as "taxes" under section 23 (c) of the Code since the taxes owed by the corporation were not levied against him. Petitioner

does claim, however, that the payments which he made arose out of the fact that he was a stockholder, officer, and director of the corporation and that the evidence is clear that petitioner did not pay the taxes as a volunteer.

Petitioner contends that the tax payments constitute either losses "incurred in trade or business" under section 23 (e) (1) of the Code, or nonbusiness losses under section 23 (e) (2), *supra*, and that he therefore is entitled to deductions for them in the years paid. Since petitioner never received any assets from the corporation his alleged liability for its delinquent taxes arose solely out of his position as an officer and director. It is clear from our findings of fact, however, that petitioner's only "trade or business" during 1948 and 1949 was as a concessionaire with the James E. Strates shows. Although he was an officer and director of the corporation, he took no active part in the management of the corporation's affairs. Consequently, the alleged losses could in no case be regarded as "incurred in trade or business" under section 23 (e) (1). *Hadwen C. Fuller*, 21 T. C. 407. On the other hand, petitioner's whole relationship with the corporation, as a stockholder, officer, and director, was clearly for the purpose and with the intent of making a profit from the venture. If, therefore, the tax payments constitute losses they would qualify for deductions as nonbusiness losses, under section 23 (e) (2), since they were incurred in connection with and as a result of petitioner's position as an officer and director. See *Moses Cohen*, *Carl Hess*, and *Marjorie Fleming Lloyd-Smith*, *supra*.

Respondent contends that there is no evidence that petitioner was in fact personally liable for the corporation's taxes and that petitioner's payments thereof were voluntary and not deductible as losses. Whether petitioner was as a matter of law liable for those taxes is not the desideratum. An internal revenue official stated to petitioner that he was liable and that if payment was not made appropriate action would be instituted. We think the official's statement constituted an administrative demand for payment. It was plainly so intended. The business community generally ascribes prima facie validity to such demands and is, as a practical matter, generally compelled thereby. *Baltimore Transfer Co.*, 8 T. C. 1. Moreover, petitioner's attorney agreed with the official that petitioner was civilly liable for those taxes. Petitioner, therefore, had genuine reason to, and did, believe himself liable. He paid the taxes only because of that belief and not as a mere volunteer. How the Commissioner can contend, under the undisputed facts which are in the record, that petitioner paid these taxes as a volunteer is more than we can see. We think that petitioner may properly deduct these payments as nonbusiness losses even though an adjudication on the issue might prove

him free from liability. *E. L. Bruce Co.*, 19 B. T. A. 777; *Guitar Trust Estate*, 34 B. T. A. 857. Cf. *Great Island Holding Corporation*, 5 T. C. 150; *William L. Butler*, 17 T. C. 675.

Our holding is not affected by the fact that there was no evidence of an attempt by petitioner to obtain refunds of those payments and of the failure of the attempt. We do not believe that the petitioner need seek a complete review and adjudication of a liability which is colorable and has been bona fide asserted against him, even though doubts may exist as to its validity. See *E. L. Bruce, Great Island Holding Corporation, William L. Butler, supra.* A loss deduction may be taken when, as here, such a liability has been paid. As stated in *United States* v. *S. S. White Dental Mfg. Co.*, 274 U. S. 398, "a loss may become complete enough for deduction without the tax-payer's establishing that there is no possibility of an eventual recoupment."

*Decision will be entered under Rule 50.*