Michael E. Brodsky and Dorothy K. Brodsky v. Commissioner.
Brodsky v. Commissioner
Docket No. 68185.
United States Tax Court
T.C. Memo 1958-199; 1958 Tax Ct. Memo LEXIS 23; 17 T.C.M. (CCH) 979; T.C.M. (RIA) 58199; November 28, 1958
*23 Held: 1. After auditing and accepting petitioners' income tax return as filed, respondent is not barred from subsequently re-examining such return, disallowing a deduction claimed thereon and determining a deficiency in tax for the taxable year. 2. Amounts paid by petitioners in satisfaction of their guaranty obligations are deductible only as non-business bad debts under section 23(k)(4), I.R.C. 1939. Putnam v. Commissioner, 352 U.S. 82. Held further: Amount of appeals fees expended by petitioner in connection with his efforts to reduce his guaranty liabilities, is deductible as a loss incurred in a transaction entered into for profit, under section 23(e)(2), I.R.C. 1939. Peter Stamos, 22 T.C. 885. Harry Freedman, Esq., for the petitioners. Raymond T. Mahon, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the petitioners' income tax for the year 1953 in the amount of $6,010.64. Two issues are presented for decision: (1) Whether the respondent, after examining and accepting petitioners' return as filed may subsequently reopen his examination of such return and in the light of a Supreme Court decision rendered *24 subsequent to his original examination disallow a claimed deduction and determine a deficiency in tax; and (2) alternatively, whether respondent properly determined that the amount of $17,296.06 which the petitioners were alleged to have paid in connection with their guaranties of obligations of the Aynesworth Company is deductible only as a nonbusiness bad debt. Findings of Fact The petitioners are husband and wife. They reside at 1075 Wood Avenue, Bridgeport, Connecticut. They filed a joint income tax return for the year 1953 with the district director of internal revenue at Hartford, Connecticut. Hereinafter Michael E. Brodsky will be referred to as petitioner. For the past 30 years petitioner has been a practicing physician. Prior to the year 1953, petitioner became a stockholder in the Aynesworth Company, which was organized to manufacture a sprayer and hot water heater. On March 9, 1951, petitioner guaranteed a note in the amount of $7,711.36 made by Aynesworth in connection with its account with the General Electric Company. Petitioner also guaranteed Aynesworth's liability to the Colonial Finance Company. Aynesworth was adjudicated bankrupt on March 30, 1953. In 1953, petitioner *25 was required to pay $7,711.36 to the General Electric Company in his capacity as guarantor of the Aynesworth note referred to above. On November 16, 1953, after a lawsuit, petitioner paid $1,857.56 to the Colonial Finance Company in his capacity as guarantor of the obligation of Aynesworth to the Colonial Finance Company referred to above. On August 7, 1953, petitioner paid $259.35 as the cost of taking an appeal from the adverse decision in said lawsuit. Belknap & Son, Incorporated, filed a suit against Aynesworth, attaching certain of its property. In 1953, petitioner paid $875 to Belknap to secure a release from said attachment. Prior to 1953, Aynesworth on two occasions borrowed money from John J. Lee in the respective amounts of $2,500 and $1,000. Petitioner guaranteed repayment of such amounts and in 1953 paid $3,500 to Lee in connection with such guaranty. In 1953, as a result of his guaranty of Aynesworth's obligations, petitioner paid $696.79 to the Burger Insurance Service. On February 14, 1950, Dorothy K. Brodsky, petitioner's wife, guaranteed a note upon which Aynesworth was principally liable to City Savings Bank of Bridgeport. During 1953 Dorothy paid $2,200 to the City *26 Savings Bank of Bridgeport in her capacity as guarantor of such obligation. On their joint income tax return for 1953 petitioners claimed a deduction in the amount of $17,296.06 arising out of their payments described above. On December 23, 1955, after petitioners' 1953 income tax return had been audited by a member of the Internal Revenue Service, they received a letter from the district director of internal revenue which stated as follows: "Upon examination of your income tax return for the year indicated above [1953] the conclusion has been reached that it should be accepted as filed. "I am sure you will appreciate that should subsequent information be received which would materially change the amount reported, it will be necessary under existing laws to redetermine your tax liability." After the decision of the Supreme Court in Putnam v. Commissioner, 352 U.S. 82, was handed down on December 3, 1956, petitioners' 1953 income tax return was reexamined by the Internal Revenue Service, the claimed loss of $17,296.06 was disallowed, and a statutory notice of deficiency was mailed to the petitioners on March 15, 1957. Opinion Issue I Respondent's determination of a deficiency in this *27 proceeding was based upon the application of the principles of Putnam v. Commissioner, supra, to the facts of this case. Although admitting that the decision in the Putnam case might, in other circumstances, be applicable to a situation such as presented in the instant case, petitioners make the argument that the principles of the Putnam case may not properly be applied here on the theory that the Putnam case was decided after the petitioners' return had been audited and accepted by the Internal Revenue Service. Petitioners appear to argue that in these circumstances the respondent is estopped from re-examining their return and determining a deficiency. Petitioners' argument is without merit. It has long been settled that, within the period permitted by the statute of limitations, the Commissioner, after approving a claimed deduction, may later disallow the deduction and determine a deficiency for the taxable year. Burnet v. Porter, 283 U.S. 230; McIlhenny v. Commissioner, 39 Fed. (2d) 356. In accordance with the principles of those decisions we hold that respondent was not barred from determining the deficiency involved in this proceeding. Issue II The alternative issue in this *28 case is whether the petitioners may fully deduct the amount of the payments described in our findings as a loss incurred in a transaction entered into for profit within the meaning of section 23(e)(2), Internal Revenue Code of 1939, [1] or whether such amount is a nonbusiness bad debt within the meaning of section 23(k)(4)[2] *29 and deductible only as a short-term capital loss under that section as contended by respondent. Initially, it is noted that petitioners have introduced evidence of only $17,100.06 having been paid in connection with this claimed deduction and accordingly their deduction is limited to that amount in any event. With the exception of the $259.35 appeal fees paid, which will be discussed subsequently, it appears from the record and the parties agree that the entire amount paid by petitioners ($16,840.71) was in discharge of their liability as guarantors of the obligations of The Aynesworth Company after it was adjudged bankrupt. Because of such bankruptcy, petitioners' right of reimbursement from Aynesworth with respect to such guaranties was worthless. The provisions of sections 23(e) and 23(k) are mutually exclusive and a loss deductible under the latter provision may not be deducted under the former. Spring City Foundry Co. v. Commissioner, 292 U.S. 182; Charles G. Berwind, 20 T.C. 808, affd. per curiam 211 Fed. (2d) 575. *30 When a loss is attributable to the worthlessness of a debt, it shall be regarded as a bad debt loss, deductible as such or not at all. Putnam v. Commissioner, supra.In the Putnam case the Supreme Court resolved conflicting decisions in the Courts of Appeals and held that a loss sustained by a guarantor unable to recover from the debtor is by its very nature a loss from the worthlessness of a debt. The principles of Putnam are apposite and controlling here; thus, the payments involved are deductible only under the provisions of section 23(k), and petitioners' contention that such payments are deductible under section 23(e)(2) may not be sustained. The question next arises whether the amount involved is fully deductible as a business bad debt under section 23(k)(1)[3] or as a nonbusiness bad debt under section 23(k)(4). A business bad debt is defined only by negative implication from section 23(k)(4) which provides that the "term non-business debt means a debt other than a debt evidenced by a security," as defined elsewhere, and "other than a debt which is incurred in the taxpayer's trade or business." A debt is not deductible as a business bad debt unless the loss resulting from its *31 becoming worthless is proximately related to the taxpayer's trade or business. Regs. 118, Sec. 39.23(k)-6; Samuel Towers, 24 T.C. 199, affd. 247 Fed. (2d) 233, certiorari denied 355 U.S. 914. Whether a particular loss is incurred in a taxpayer's trade or business is a question of fact in each particular case. Higgins v. Commissioner, 312 U.S. 212. It is well settled that the business of a corporation is not the business of its officers and stockholders. Burnet v. Clark, 287 U.S. 410. In the instant case, petitioner briefly testified respecting his interest in various organizations including the Lafayette Professional Building Corporation, The Stratford Chronic and Convalescent Hospital and Crest Land & Building Company. However, the record does not disclose, and we do not understand petitioners to contend *32 that the petitioner was engaged in any trade or business other than that of a practicing physician. The evidence does not disclose that Dorothy was engaged in any trade or business. In these circumstances, it is clear that the guaranty losses involved were not proximately related to any trade or business carried on by petitioners and respondent's determination with respect to such losses is sustained. With respect to the $259.35 appeal fees paid by petitioner on August 7, 1953, it appears that the amount was paid in connection with his efforts to reduce his guarantor liability for Aynesworth's obligation. It appears that petitioner acquired no right of reimbursement from Aynesworth for this expense. In this posture, the expense falls within the ambit of Peter Stamos, 22 T.C. 885, where we held that the legal expenses incurred by a taxpayer in connection with the settlement of his guarantor liability were deductible as a non-business loss under section 23(e)(2). See also Marjorie Fleming Lloyd-Smith, 40 B.T.A. 214. In accordance with those decisions we hold that the petitioners may deduct such $259.35 as a loss incurred in a transaction entered into for profit under section 23(e)(2). *33 Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - * * *
(4) Non-business debts. - In the case of a taxpayer, other than a corporation, if a non-business debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. The term "non-business debt" means a debt other than a debt evidenced by a security as defined in paragraph (3) and other than a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. * * *↩
3. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General rule. - Debts which become worthless within the taxable year * * *. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. * * *↩