Reviewed by the Court.

*Decisions will be entered under Rule 50.*

NATHAN D. LIEBERFARB, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7399–71.   Filed June 5, 1973.

*Warren E. King*, for the petitioner.
*James D. Thomas*, for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for 1967 in the amount of $4,125.67. The

---

issue for decision is whether petitioner is entitled to deduct as a non-business bad debt loss, under section 166,[1] an amount which he paid to settle a damage claim arising from an automobile accident and for which he alleges he was entitled to, but did not receive, reimbursement from a defunct insurance company.

All the facts are stipulated.

Petitioner filed his 1967 Federal income tax return with the district director of internal revenue in Chicago, Ill., where he was a legal resident at the time he filed his petition in this proceeding.

During the period beginning July 3, 1961, and ending July 3, 1962, petitioner was insured under an automobile insurance policy issued by the Banner Mutual Insurance Co., Chicago, Ill. (Banner). On September 12, 1961, his automobile was involved in an accident in which the occupants of another automobile, Wilbur and Ruth Hern (the Herns), were injured. The Herns filed a suit against petitioner to recover damages for their injuries, and petitioner was defended by attorneys initially retained by Banner.

On June 1, 1965, while the Herns' suit was pending, the Circuit Court of Cook County, Ill., entered a decree in an action brought by the Illinois State Department of Insurance (department of insurance), declaring Banner's charter to be null and void and prohibiting it from transacting company business or disposing of its property or assets. For purposes of liquidating the company, the decree placed Banner's property in the possession and control of the department of insurance.

By letter dated July 20, 1965, the department of insurance notified petitioner that Banner would not continue to investigate or defend litigation and advised petitioner to secure his own attorney to handle the Herns' suit. Attached to the letter was a standard form instruction sheet outlining the procedure prescribed by the department of insurance and the Cook County Circuit Court for proving claims against Banner. In boldface block type, conspicuously set off from the rest of the printed page, was the following statement:

THE LAST DAY FOR THE FILING OF CLAIMS, FIXED BY ORDER OF THE COURT IS 4/15/66

Immediately below the above statement was the following:

Said Order of Court provides further:

"IT IS FURTHER ORDERED that any insured under a liability insurance policy issued by the Company shall have the right to file a contingent claim herein, and that 10–1–70 is hereby fixed as the final date for the liquidation of such contingent

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

claims of insureds. No such contingent claim shall be allowed unless said claim is liquidated and the insured claimant presents evidence of payment of such claim to the Liquidator on or before 10-1-70."

Petitioner did not file a claim by the prescribed April 15, 1966, date. Nor did he file, before October 1, 1970, any proof of the final liquidation of a contingent claim, as further ordered by the court.

Petitioner arranged for the law firm which had been retained by Banner to handle the Herns' suit, and on July 24, 1967, that firm negotiated a settlement with the Herns. During 1967 petitioner paid the Herns $8,000 in settlement of the suit and on his 1967 income tax return claimed a nonbusiness bad debt deduction in that amount, apparently on the theory that he was entitled to, but had not received, reimbursement from Banner.

In a notice of deficiency dated August 2, 1971, respondent determined that petitioner had not established his right to a nonbusiness bad debt deduction. Thereafter, on October 29, 1971, petitioner filed with the department of insurance a proof of claim for reimbursement of the $8,000 Hern settlement, plus attorney's fees. In a letter dated November 2, 1971, the department of insurance acknowledged receipt of petitioner's late claim and notified him of the provisions of section 208,[2] subsec. 2, ch. 73, Ill. Rev. Stat. (1961), as follows: " 'Proofs of claim on good cause shown may be filed subsequent to the date specified but no such claim shall share in the distribution of assets until all proofs of claim, which have been filed before said date, have been paid in full.' " The letter added: "The fixing of a final date is equivalent to a statute of limitations and the rehabilitator is without discretion or authority to vary or alter said final date."

The record shows that of the 3,261 Banner claim holders whose claims were timely filed with the department of insurance, 1,557 were allowed. After marshaling Banner's assets, the liquidator had sufficient funds in 1972 to complete payments totaling 41.3 percent of the allowed claims. Consequently, no funds were available for any late claims, and petitioner collected nothing.

Petitioner urges that he is entitled to "a non-business bad debt deduction due to the uncollectibility of the indebtedness of $8,000.00 existing and due from Banner."[3] Specifically, he argues that:

upon the payment * * * of the sum of $8,000.00 in settlement of the personal injury case, a debt was created, due to the petitioner from the Insurance Company [Banner] by reason of its indemnity contract, namely, its insurance policy;

---

[2] The reference is apparently to section of Ill. Laws 1937, where this provision was originally enacted, which corresponds to subsec. (2) of sec. 820, ch. 73, Ill. Ann. Stat. (Smith-Hurd 1965).

[3] In the petition, it is alleged that a deduction for the $8,000 paid to the Herns is allowable to petitioner under sec. 165 "as a loss arising from fire, theft or other casualty." In his brief, however, petitioner states that he abandons this theory.

that upon payment of the said sum of $8,000.00 the debt thereby created became and was worthless because of the prior insolvency and prior dissolution of the Insurance Company.

Petitioner's argument is grounded upon section 166 (d)[4] which allows as a deduction "any nonbusiness debt" which "becomes worthless within the taxable year." However, not every claim for reimbursement is a debt within the meaning of this section. "Only a bona fide debt qualifies," and "A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166–1(c), Income Tax Regs. This means that petitioner must show that he was owed a valid debt which became worthless in 1967. *W. A. Dallmeyer*, 14 T.C. 1282, 1291 (1950).

Petitioner's argument assumes that Banner was obligated to indemnify petitioner for his settlement payment. However, respondent has pointed out that petitioner has not shown that he was entitled, under his insurance policy, to reimbursement from Banner. We are told none of the details of the accident in which the Herns were injured. The stipulation regarding the accident in which the Herns were injured is cast in broad and general terms; yet the insurance policy contains numerous technical conditions and exclusions from coverage. As noted above, less than half of the timely filed claims were allowed. We are not satisfied that petitioner has established that the insurance policy gave him a valid and enforceable claim against Banner or, alternatively, the department of insurance as Banner's liquidator. See *L. J. Bardwell*, 5 B.T.A. 1061, 1063 (1927).

Moreover, even if the Banner policy as written entitled petitioner to reimbursement for the $8,000, petitioner's rights were altered by the intervening insolvency of Banner and the subsequent Cook County Circuit Court order. On June 1, 1965, more than 2 years before the date of petitioner's settlement with the Herns, Banner's charter was declared null and void by court decree, and the settlement of out-

---

[4] SEC. 166. BAD DEBTS.—
　(d) NONBUSINESS DEBTS.—
　　(1) GENERAL RULE.—In the case of a taxpayer other than a corporation—
　　　(A) subsections (a) and (c) shall not apply to any nonbusiness debt; and
　　　(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
　　(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
　　　(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
　　　(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

standing claims against Banner's assets was placed under the control of the department of insurance. Under the prescribed procedure, petitioner's claim for indemnification could ripen into an enforceable, binding right only if three conditions or contingencies were met. First, petitioner was required to file with the department of insurance proof of his contingent claim by April 15, 1966. Second, petitioner was required to liquidate his contingent claim and present evidence of such payment to the department of insurance prior to October 1, 1970. Third, the claim would have to be allowed by the department of insurance. The facts show that none of these conditions was met in 1967 in petitioner's case.

It is a well-settled rule that a deduction for a bad debt is allowable only if the obligation to pay the amount thereof is certain and actually in existence at some time during the taxable year. *Bercaw* v. *Commissioner*, 165 F. 2d 521, 525 (C.A. 4, 1948), affirming a Memorandum Opinion of this Court. It is further established that a debt does not exist for the purpose of section 166 where the obligation to repay is subject to a contingency or condition that has not been met. *Zimmerman* v. *United States*, 318 F. 2d 611, 612 (C.A. 9, 1963) ; *Evans Clark*, 18 T.C. 780, 783-784 (1952), affirmed per curiam 205 F. 2d 353 (C.A. 2, 1953). Since in 1967 petitioner had not filed a claim for reimbursement for his outlay to the Herns, presented proof of such payment, or obtained his claim's allowance, he has not shown he held a valid and enforceable obligation in that year to be repaid the $8,000, or any part of that sum, which he claims as a deduction.

The cases relied upon by petitioner [5] are distinguishable in this regard because in each one of them the Court found that the taxpayer was owed an enforceable obligation during the taxable year which entitled him to be paid a fixed or determinable amount. Here, petitioner was aware of the steps necessary to perfect his claim to a share of Banner's assets; yet he did not initiate the required procedures until over 5 years after the filing date had passed and, in fact, after he received from respondent a notice of deficiency disallowing his bad debt deduction. Considering petitioner's failure to file a timely claim with the department of insurance and the complete lack of facts indicating whether petitioner's settlement payment to the Herns was indemnifiable under the intricate conditions and exclusionary terms of the

---

[5] On brief, petitioner relies upon the following cases : *Putnam* v. *Commissioner*, 352 U.S. 82 (1956) ; *Agnes I. Fox*, 14 T.C. 1160 (1950), revd. 190 F. 2d 101 (C.A. 2, 1951) ; *Barnhart-Morrow Consolidated*, 47 B.T.A. 590 (1942), acq. 1944 C.B. 3, affd. 150 F. 2d 285 (C.A. 9, 1945) ; *D. W. Pierce*, 41 B.T.A. 1261 (1940), acq. 1940-2 C.B. 6 ; *Daniel Gimbel*, 36 B.T.A. 539 (1937), acq. 1937-2 C.B 11.

Banner policy, we are constrained from speculating whether petitioner might have had his claim allowed had it been timely filed.[6]

Finally, it must be borne in mind that petitioner contends that his debt claim against Banner was a "non-business bad debt" under section 166(d) rather than a debt related to his business. In *Rollins* v. *Commissioner*, 276 F. 2d 368, 372 (C.A. 4, 1960), affirming 32 T.C. 604 (1959), the court said:

> In contrast to business bad debts, which may be deducted under \* \* \* [sec. 166 (a)] to the extent that they become partially worthless in a given year, a non-business debt, to be deductible at all, must become *totally* worthless during the taxable year. If it becomes only partially worthless, it is not deductible to any extent in that year. \* \* \*

See also sec. 1.166–5(a)(2), Income Tax Regs. Thus, even if petitioner, notwithstanding the foregoing facts, can be said to have had a valid and enforceable right in 1967 to indemnification for his $8,000 outlay, he has not shown that the debt became worthless "within the taxable year." Sec. 166(d). As discussed above, it appears that on April 15, 1966—prior to the taxable year—when petitioner failed to file his claim with the department of insurance, he lost his right to reimbursement unless a surplus remained after all timely claims were paid. Not until 1972 did the department of insurance complete its adjudication of timely filed claims and the marshaling of Banner's assets for application thereon. Assuming petitioner had a valid right to a debt which did not become worthless prior to 1967, the department of insurance did not determine until 1972—long after the close of the taxable year in issue—that he would be paid nothing.

It is true that the stipulated facts show that by 1967 Banner's charter had been declared to be null and void, and its assets were being liquidated by the department of insurance for application on allowed claims. But these facts alone are not sufficient to show that nothing would ever be paid on petitioner's claim. "While oftentimes bankruptcy has been held to be the identifiable event which showed that a debt was entirely worthless, this is not inevitably so." *W. A. Dallmeyer*, 14 T.C. at 1292; *Teitelbaum* v. *Commissioner*, 294 F. 2d 541, 546 (C.A. 7, 1961), affirming a Memorandum Opinion of this Court, certiorari denied 368 U.S. 987 (1962). Each case must turn on its own facts.

As pointed out above, payments totaling 41.3 percent of the allowed claims were finally completed in 1972, and as late as October 29, 1971, petitioner filed his claim for the first time with the department of insurance. We cannot assume that he thought filing the claim in 1971 was a futile act. If petitioner did have a valid and enforceable debt

---

[6] We note that less than 50 percent of the claims filed with the department of insurance were allowed to any extent.

claim against the department of insurance in 1967, he has not shown it became totally worthless in that year.[7] Cf. *L. J. Bardwell*, 5 B.T.A. at 1063.

*Decision will be entered for the respondent.*

---

[7] Respondent has made other arguments (including the proposition that petitioner does not have a basis in his claim for bad-debt-loss deduction purposes), in support of the disallowance of the deduction, which we find it unnecessary to consider.