CRETYL C. MILLS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Mills v. Commissioner
Docket No. 6756-72.
United States Tax Court
T.C. Memo 1974-214; 1974 Tax Ct. Memo LEXIS 104; 33 T.C.M. (CCH) 961; T.C.M. (RIA) 74214; August 21, 1974, Filed. Cretyl C. Mills, pro se. Richard N. Weinstein, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: The respondent determined a deficiency in the Federal income tax of petitioner for the year 1970 in the amount of $393.21. The sole issue for decision is whether certain sums of money advanced by petitioner to Hillis R. Craig during 1970 became worthless bad debts and, therefore, deductible in 1970 from petitioner's gross income under section 166 of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts in the present case are stipulated. The stipulation of facts with the exhibits attached thereto are incorporated *105 by reference. Cretyl C. Mills, hereinafter referred to as the petitioner, resided at 619 Beechwood Drive, Havertown, Pennsylvania during the tax year in question. She was employed full-time as a medical technician at the University of Pennsylvania Hospital. Petitioner filed her Federal income tax return for 1970 with the district director of internal revenue in Philadelphia, Pennsylvania. Sometime during 1968 petitioner became acquainted with Hillis R. Craig (Craig). Craig was, apparently, in desperate financial condition at this time and petitioner assisted him by advancing cash for food and other necessities. This benevolence continued until 1972 when petitioner determined, evidently, that Craig was more of a financial burden than she could bear. Except for the year 1969, when Craig obtained employment with a newspaper in North Wildwood, New Jersey, petitioner made frequent advances to Craig as summarized herein: Year
Total Amount of Advancements
1968
$1,310.00
1969
[2] 86.00
1970
888.00
1971
756.00
1972
50.50
*106 During 1970, the tax year in question, petitioner advanced funds to Craig in the amount of $888.00. This amount was claimed as a bad debt deduction under the "Miscellaneous Deductions" section on petitioner's Federal income tax return. On January 5, 1970, some four months prior to any advancement during that year, petitioner had Craig sign the following handwritten document which petitioner had prepared: 1/5/1970 At Knoll's Motel, Wildwood, N.J. I agree to repay any loans made to me in 1970 by Cretyl C. Mills of Havertown, Pa. I will make repayment as soon as I receive funds at a rate of $10 to $20 weekly until the debt is repaid. Signed HILLIS R. CRAIG Knolls Motel Wildwood, N.J.[3]
Also during the tax year in question, petitioner began publication of a bi-monthly newspaper, the South Jersey Times. Because Craig had had some prior newspaper experience, petitioner employed him as editor of her new venture from May *107 until October of 1970. Craig had declined an offer to work for another New Jersey newspaper in order to accept this position with petitioner. The newspaper proved unprofitable and publication ceased after four issues. Subsequent to the failure of her newspaper, petitioner continued to advance money to Craig and deducted the respective amounts as worthless bad debts on her 1971 and 1972 Federal income tax returns. On two occasions following the close of the 1970 tax year, petitioner and Craig consulted two attorneys to determine if Craig had a valid legal claim as a beneficiary in the estate of a deceased relative. Both attorneys advised Craig and petitioner that Craig's interest in the estate was legally questionable. By October 7, 1972, petitioner had received approximately $500.00 from Craig as repayment for prior advances. OPINION Respondent disallowed petitioner's 1970 deduction of amounts advanced to Craig during the year on the alternative grounds that no valid debt existed between the parties, or, if in fact a valid debt did exist, it had not become worthless as required by the statute. For a nonbusiness bad debt to be deductible under the provisions of section *108 166(d), it must be "A bona fide debt * * * which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. A debt under section 166 must be an unconditional obligation to pay a sum certain. United States v. Virgin, 230 F.2d 880 (C.A. 5, 1956); Bercaw v. Commissioner, 165 F.2d 521 (C.A. 4, 1948), affirming a Memorandum Opinion of this Court. The petitioner has the burden of proving that a debtor-creditor relationship was intended, that a valid debt is fact existed, and that the debt became worthless within the tax year. Giffin Andrew, 54 T.C. 239 (1970); Evans Clark, 18 T.C. 780 (1952), affd. per curiam, 205 F.2d 353 (C.A. 2, 1953); Estate of Carr V. Van Anda, 12 T.C. 1158 (1949), affd. per curiam, 192 F.2d 391 (C.A. 2, 1951). The evidence in this case discloses a regular pattern on the part of petitioner in advancing funds to Craig from 1968 until 1972. Although only one year, 1970, is at issue in this proceeding, petitioner's prior and subsequent conduct is relevant to our determination *109 since the issues presented are factual. Petitioner described her early advances as motivated by "compassion" for Craig. After deducting the advances made in 1968 and 1969 on her respective income tax returns, she subsequently stated that a debtor-creditor relationship arose in 1970. Then petitioner later testified that during 1970 she "began to feel the debt might be worthless." In continuing to advance funds during the latter part of 1970, petitioner indicated that she felt obligated to help Craig since he had declined a position with an established newspaper in order to edit the short-lived South Jersey Times. We deem it unnnecessary to precisely characterize the nature of each advance during 1970 since we are convinced that petitioner has failed to show that any of the 1970 advances constituted a bona fide debt. The decisive factor in this case is fundamental. An obligation to pay can be contingent or subject to a condition. However it is well established that a debt, within the meaning of section 166, does not arise from such an obligation until the contingency is met. Zimmerman v. United States, 318 F.2d 611 (C.A. 9, 1963); Nathan D. Lieberfarb, 60 T.C. 350 (1973); *110 Lucia Chase Ewing, 20 T.C. 216 (1953); affd 213 F.2d 438 (C.A. 2, 1954); Evans Clark, supra.[4]
The January 5, 1970, note relied on by petitioner expressly states that Craig "will make repayment as soon as I [Craig] receive funds * * *." Petitioner stated in her testimony that the obligation was contingent on two events: (1) that Craig obtain regular employment; or (2) that Craig receive an inheritance from the estate of a deceased relative. The latter event had not occurred and Craig's employment during the period from 1970 until the time of trial was erratic. Since neither contingency had been met, we hold that no bona fide debt had come into existence and the deduction was properly disallowed. Beyond the conditional nature of the obligation, we also note that certain indicia of a true debt are absent in this case. For example, petitioner charged no interest and the provisions for time and method of repayment were vague, indefinite and ambiguous. A written instrument evidencing a loan transaction did not accompany any of the numerous transfers of funds. Moreover, we *111 question whether petitioner expected or earnestly attempted to seek repayment due to the fact that she did not collect or withhold monies from Craig while he was her employee. Finally, petitioner's continued advances to Craig when she had no reasonable expectation of repayment indicates to us that either no debtor-creditor relation existed or she did not consider the obligation worthless. See Zimmerman v. United States, supra; Janet McBride, 23 T.C. 926 (1955); New York Water Service Corporation, 12 T.C. 780 (1949). In holding that a qualifying debt never existed we need not elaborate on respondent's alternative argument. If a bona fide debt does exist, the deduction is allowed only if petitioner sustains the burden of proving that it became worthless within the taxable year. We think petitioner has failed to sustain this burden and that the decision in this case could rest on this determination alone. In presenting her case and providing this Court with memoranda, petitioner, we feel, has misconstrued the law concerning the deductibility of worthless bad debts under section 166. She has, in effect, argued that since an outstanding obligation *112 was not repaid within the tax year, it then became deductible. This, obviously, is not the law. Even where a debt is of doubtful value or its collection difficult, it is not ipso facto deductible. Petitioner raised additional matters unrelated to the section 166 question. The constitutional arguments asserted by petitioner with respect to the authority of this Court to adjudicate tax controversies have been substantially answered in Burns, Stix Friedman & Co., 57 T.C. 392 (1971). As to petitioner's primary constitutional argument that she was denied a jury trial, that question has also been answered in Emma R. Dorl, 57 T.C. 720 (1972). Further, petitioner raised several new issues and arguments in her brief. We deem it improper to now consider such matters. We are satisfied that even if those matters had been presented in timely fashion, they would not affect our determination in this case. Respondent's disallowance of the claimed deduction was in accordance with section 166 and must be sustained since neither the existence of a bona fide debt nor its worthlessness during 1970 has been established. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise stated. ↩
2. On her Federal income tax returns for 1968 and 1969, petitioner deducted in the respective years all or a portion of these advancements as worthless bad debts. ↩
3. During the questioning of Craig at trial, he first stated that this document was signed in September of 1972. Later Craig identified his signature but he could not recall the date or circumstanes surrounding the execution of this document. ↩
4. See also, J. J. Bowman, T.C. Memo 1966-108↩.