LESLIE A. NOVAKY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Novaky v. Commissioner
Docket Nos. 6527-73, 3893-76, 5251-76.
United States Tax Court
T.C. Memo 1977-395; 1977 Tax Ct. Memo LEXIS 44; 36 T.C.M. (CCH) 1601; T.C.M. (RIA) 770395; November 15, 1977, Filed Leslie A. Novaky, pro se in docket No. 6527-73. Leslie A. Novaky and Helen Novaky, pro se in docket No. 5251-76. Clyde Swasey and Barbara Swasey, pro se in docket No. 3893-76. Joseph F. Maselli, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Docket
Calendar (Petitioners)
No.
Year
Deficiency
Leslie A. Novaky
6527-73
1970
$3,726.73
Leslie and Helen
Novaky
5251-76
1972
1,827.62
Clyde Swasey and
Barbara Swasey
3893-76
1972
416.70 In addition, in his notice of deficiency to Leslie and Helen Novaky in docket No. 5251-76, respondent asserted an addition to tax under section 6653(a), I.R.C. 1954, [2] in the amount of $91.38. The issues for decision are: (1) Whether Leslie A. Novaky is entitled to an exemption of $625 under *47 section 152(e) for each of his two minor children in 1970; (2) whether Leslie and Helen Novaky or Clyde and Barbara Swasey are entitled to an exemption of $750 under section 152(e) in 1972 for each of the two children of Leslie Novaky and Barbara Swasey; (3) whether for 1970 Leslie A. Novaky is entitled to deductions of $6,473.75 and $20,800 relating, respectively, to losses in the operation in corporate form of a liquor store and bar in 1968 and 1969 and to sale of the corporate stock in 1969 for which he received a note as consideration; (4) whether Leslie A. Novaky and Helen Novaky are entitled to a deduction of $7,534.64 in 1972 for a claimed business loss carried forward from prior years; (5) whether Leslie A. Novaky is entitled to deductions in 1970 of $250 and $300 for charitable contributions and interest payments, respectively; (6) whether in 1972 Leslie A. Novaky and Helen Novaky may deduct $1,000, the amount they forfeited in an unsuccessful attempt to purchase a personal residence; and (7) whether any part of any underpayment of tax by Leslie A. Novaky and Helen Novaky in 1972 was due to negligence or intentional disregard of rules and regulations. *48 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Leslie A. Novaky timely filed an individual Federal income tax return for calendar year 1970. He and Helen Novaky, husband and wife in 1972, timely filed a joint Federal income tax return for calendar year 1972. Clyde Swasey and Barbara Swasey, husband and wife in 1972, timely filed a joint Federal income tax return for calendar year 1972. At the time of filing the petitions in each of these cases, each petitioner resided in New Jersey. Issues 1, 2. Exemptions
Petitioners Leslie Novaky and Barbara Swasey were married on June 15, 1957, and were divorced on June 21, 1968, pursuant to a final judgment of divorce of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Pursuant to the divorce decree Barbara Swasey was awarded custody of the two children of their marriage, Todd and Dana Novaky. In 1970, the children were 9 and 11 years old, respectively. In March 1969, Leslie Novaky sent $6,000 to his children and former wife, Barbara Swasey. Of this amount, $1,500 was expended in 1969 for support and $2,500 was expended for a house downpayment. *49 Part of the $6,000 was later returned to Mr. Novaky in settlement of a court proceeding. In 1970, Leslie Novaky paid $575 in money for the support of his two children. This sum included $200 given to the children for clothing and $275 paid as a result of a court proceeding instituted in 1970 by Barbara Swasey for support. Mr. Novaky also expended some additional funds for support of the children. Clyde and Barbara Swasey amde the following expenditures in 1970: Expenditures Incurred in Florida
Food
$1,113.34
Telephone
214.50
Exterminator
82.25
Mortgage (Taxes, Interest, Principal)
806.00
Water & Electricity
267.39
Car Payments
540.00
Car Insurance
152.27
Life Insurance
99.02
Clothing, Toys, Books, School Supplies *
623.35
Medical *
3.00
Clothes *
300.00
P.T.A., Books *
13.15
Expenditures Incurred in New Jersey
Food
$ 1,073.39
Clothes *
374.00
Telephone
116.15
Medical *
47.70
Milkman
97.28
School *
27.75
School Insurance *
24.00
Mortgage
924.00
Home Insurance
114.44
Home Payments, Closing Costs &
Costs of Moving From Florida
to New Jersey
12,914.39
Electricity
47.46
Heating Oil
150.00
Car Insurance
124.92
Refrigerator
100.00
*50 Clyde and Barbara Swasey reported gross income of $18,637.24 on their joint Federal income tax return for calendar year 1970. During 1970, Clyde and Barbara Swasey expended funds in addition to the items listed above for support of the children. No one other than Mr. Novaky and Mr. and Mrs. Swasey provided support for the children in 1970. In 1970 and in 1972, the Swasey household contained four persons, Clyde and Barbara Swasey and Todd and Dana Novaky. In 1972, Clyde and Barbara Swasey made the following expenditures: Food
$ 4,538.84
Clothing, Sporting Goods *
614.81
Recreation
323.95
Telephone
373.09
School Dues * (Todd)
15.00
School Insurance * (Dana)
14.00
Recreation *
12.75
Medical *
40.00
Books and Magazines *
51.89
Christmas Gifts *
204.06
Mortgage Payments (Taxes,
Interest & Principal)
4,035.13
Utilities
279.08
Heating Oil (For the House)
357.00
Homeowner Insurance
114.44
Accidental Death Insurance Policy
19.00
Car Payments
1,155.20
Car Registration, Licenses
56.00
Car Insurance
255.81
Furniture (Dana's Room)
180.00
Attorney's Fees (For Support Actions)
50.00
*51 Half of the food purchased was consumed by the children. Also, approximately one-half of the use of the house and telephone was by the children. The fair rental value of the house in 1972 was at least $5,000. Three-quarters of the use of the car was for the children. Of the amounts listed above as spent solely on the children, approximately one-half was spent on each child. The gross income reported by Clyde and Barbara Swasey on their 1972 Federal income tax return was $24,681.65. In 1972, Clyde and Barbara Swasey expended funds in addition to the items above listed for support of the children. Leslie Novaky paid a total of $2,020 toward the support of the children in 1972. [3] No funds for support of the children in 1972 were provided by anyone other than Mr. Novaky and the Swaseys. Deductions for exemptions under section 151(e) for Todd and Dana Novaky were claimed by petitioner *52 Leslie Novaky and by petitioners Clyde and Barbara Swasey on their respective Federal income tax returns for calendar year 1970. Respondent in his notice of deficiency to Leslie Novaky disallowed his 1970 claimed exemptions deduction for the children. The exemptions claimed as a deduction by the Swaseys for the two children in 1970 are not in issue in this case. Deductions for exemptions for each of the two Novaky children were taken on their respective 1972 returns by petitioners Leslie and Helen Novaky and by petitioners Clyde and Barbara Swasey. Respondent disallowed the claimed deductions for exemptions for the children in his notice of deficiency to petitioners Leslie and Helen Novaky and in his notice of deficiency to petitioners Clyde and Barbara Swasey. Issues 3, 4. Deductions Relating to S. Piatak, Inc.
On August 13, 1968, Leslie Novaky agreed to purchase the capital stock of S. Piatak, Inc., a New Jersey corporation, from Joseph, Dorothy and Frank Squindo, its stockholders. The agreement of sale stated in pertinent part: AGREEMENT
THIS AGREEMENT made this     day of    , 1968, by and between JOSEPH P. SQUINDO and DOROTHY A. SQUINDO, residing in *53 the Borough of Metuchen, and FRANK F. SQUINDO, residing in the City of New Brunswick, County of Middlesex and State of New Jersey (hereinafter referred to as "Stockholders"); and LESLIE A. NOVAKY, residing in the Township of Franklin, County of Somerset and State of New Jersey (hereinafter referred to as "Purchaser"); WITNESSETH:
WHEREAS, Stockholders are presently the owners of all the issued and outstanding stock of S. Piatak, Inc. (hereinafter referred to as "Corporation"), a New Jersey Corporation; and WHEREAS, Purchaser is desirous of purchasing all the issued and outstanding stock of the said corporation; NOW, THEREFORE, in consideration of the following consideration to be paid in a manner hereinafter set forth, and subject to the terms and conditions hereinafter enumerated, it is hereby stipulated and agreed between the parties hereto as follows: 1. Purchaser does hereby covenant and agree to purchase all of the issued and outstanding stock of S. Piatak, Inc., a New Jersey Corporation, payment to be made and computed according to the following terms and conditions: A. A deposit in the sum of FIVE HUNDRED AND 00/100 ($500.00) DOLLARS, receipt whereof is hereby *54 acknowledged to be held in escrow by Valenti & Greenberger, Esqs., attorneys for Stockholders, pending closing. B. The balance of the cash as hereinafter computed is to be paid in cash or certified check on the date of closing. C. The parties hereby acknowledge that there is existing as of the date of this agreement, debts of the corporation to liquor wholesalers and rental due and owing the landlord. It is the intention of the parties that the purchaser will assume the payment of back rent in an amount not to exceed $2000.00, and that the purchaser will furthermore assume the payment of accounts payable of the corporation including but not limited to amounts owed liquor suppliers in an amount not to exceed $9000.00, and it is the intention of the parties that these amounts shall constitute additional consideration for the purchase of the stock of the corporation as herein set forth. Upon assumption of these obligations the purchaser agrees that the stockholders are no longer responsible for such debts and liabilities and the purchaser further agrees to indemnify and save harmless the stockholders from any claims by anyone against stockholders based upon these claims. *55 D. Parties agree that any utility expenses due and owing as of the date of closing will remain obligations of the corporation and that all deposits with the utility companies will be deemed assets of the corporation. * * *
G. The corporation shall convey to Joseph Squindo the lands and premises located at 17 Highland Avenue, Metuchen, New Jersey. The seller shall supply to the purchaser a compressor unit for the large cooling box now located upon the premises. 2. Stockholders covenant, warrant, and represent: A. That they have valid title to the capital stock of S. Piatak, Inc., and have the full right, power, and authority to enter into this agreement and sell the stock pursuant thereto. B. That the sale of the stock hereunder will not constitute a breach or violation of or default under any will, deed of trust agreement, or any instrument by which any of them is bound. C. The cororation is, and will be after the date of closing, a corporation duly organized and validly existing and in good standing under the laws of the State of New Jersey, and said corporation has the power to own its properties and conduct its business as now owned and conducted, and *56 the conduct of its business does not require its qualification as a foreign corporation in the jurisdiction and that it has no subsidiaries. * * *
E. That the said corporation is the holder of Plenary Retail Consumption License No. C-88, issued by the City of Perth Amboy, Middlesex County, New Jersey, which license is and will be as of the date of closing, in all respects valid and in full force and effect, and that there are no pending violations or complaints effecting the same to the knowledge of the stockholders. * * *
3. Purchaser agrees to assume as of the date of closing all responsibility for all obligations from that date under a lease agreement between Breco Realty Company, Inc. and S. Piatak, Inc., relating to the demised premises, subject, however, to the provisions set forth relating to limitations on rent arrearages. * * *
5. At the closing, stockholders shall deliver a bill of sale to purchaser for the stock being transferred hereunder, and will cause to be issued such shares of stock of such ratio and proportion as purchaser shall desire. 6. Stockholders agree that all books and records, whether corporation, accounting, legal or otherwise *57 of the corporation, which stockholders received from the original incorporators of S. Piatak, Inc. will be turned over to the purchaser at the time of closing.Furthermore, at the time of closing, stockholders will present a resignation of officers and directors of the corporation. The closing of this sale occurred on October 7, 1968. The purchase price of $5,440 was allocated by the contracting parties $2,000 to capital stock and $3,440 to liquor. In addition, Leslie Novaky assumed liabilities totaling $11,005.35. S. Piatak, Inc. was incorporated on October 5, 1965, and operated a liquor store and bar in Perth Amboy, New Jersey. The state liquor license for the store was held in the corporate name, S. Piatak, Inc. Separate books and records were maintained for the corporation by Mr. Novaky. However, on his Federal income tax return for calendar year 1969, Mr. Novaky reproted the items of income and deduction from the business on a Schedule C, entitled "Profit (or Loss) From Business or Profession (Sole Proprietorship)," attached to his Form 1040. Also, the items listed there covered the entire period Mr. Novaky owned the corporation, August 1968 through January 15, 1969. *58 In September of 1968, Mr. Novaky sought permission from the regulating authorities to move the liquor store to another location in Perth Amboy. In anticipation of the move, Mr. Novaky rented space at another location. He paid $3,200 in rent and deposits from October 1968 through January 1969. His request to move was turned down, however. On January 13, 1969, Leslie Novaky filed with the New Jersey Department of the Treasury a Retail Licensee's Beverage Tax Report for S. Piatak, Inc. The report showed the corporation's closing inventory for the one-month period ending December 31, 1968. He signed the report as a corporate officer, "Leslie Novaky, Sec. Treas." Leslie Novaky sold the capital stock of S. Piatak, Inc. to Fred D'Ante and Rose D'Ante. The D'Antes were to pay $20,000 and assume the unpaid corporate liabilities. Mr. Novaky received as payment a demand note in the amount of $20,000, with interest at 6 percent per year, executed by Fred D'Ante and Rose D'Ante and dated January 15, 1969. Also, on January 15, 1969, the corporation's board of directors replaced Mr. Novaky with Mr. D'Ante as the corporation's appointed agent. The resolution was signed by Fred F. D'Ante *59 and Rose D'Ante as president and secretary, respectively. The note executed by the D'Antes has never been paid and is still held by Mr. Novaky. No interest payments have been made. S. Piatak, Inc. was placed in receivership in August of 1969. All of its assets were sold to satisfy outstanding liabilities. Its liquor license was revoked in November of 1969. On February 8, 1971, the corporation's existence was voided for nonpayment of corporate taxes. Mr. Novaky has never filed suit to collect on the note. Prior to the sale of the corporation assets, he did try unsuccessfully to collect from Mr. D'Ante. After that time Mr. Novaky lost track of Mr. D'Ante. Mr. Novaky went to Mr. D'Ante's residence in Perth Amboy, New Jersey and found that Mr. D'Ante had moved and left no forwarding address. On his 1969 Federal income tax return, Leslie Novaky claimed a business loss of $17,235. This loss arose from the operation of the liquor store and bar, but was reported on his return as loss from a sole proprietorship. Mr. Novaky applied $10,761.25 of this loss against his 1969 income. The loss claimed in 1969 was not carried back to the 3 years preceding 1969. On his 1970 Federal *60 income tax return, Leslie Novaky claimed deductions of $6,473.75, described as "Business expense carryover #1045 1969," and $20,800, described as "Business loss Attorney Publowski Perth Amboy, N. J." Respondent in his notice of deficiency to petitioner disallowed these deductions entirely. On Leslie A. and Helen Novaky's joint Federal income tax return for 1971 they claimed a carryover loss of $8,446.36, described as "#1045 carryover 1970." On their joint Federal income tax return for calendar year 1972, Leslie A. and Helen Novaky claimed a deduction of $7,534.64, described as "Business loss" and "Carryover." This deduction was disallowed by respondent in his notice of deficiency. Issues 5, 6. Miscellaneous Deductions
On his Federal income tax return for 1970, Mr. Novaky claimed a deduction of $250 for charitable contributions. Although he made contributions, especially to St. Mary's Catholic Church, he maintained no records substantiating these contributions. In his notice of deficiency, respondent disallowed this $250 deduction, stating that Mr. Novaky had failed to establish that this amount was expended for the purpose designated. Also on his 1970 Federal income *61 tax return, Mr. Novaky deducted $300 for interest expense, described as "Prudential." In his notice of deficiency to Mr. Novaky, respondent disallowed this deduction, stating that Mr. Novaky had failed to establish that this amount was expended for the purpose designated. Until 1970, Mr. Novaky had an insurance policy with Prudential Insurance Company against which he had taken a loan or loans prior prior to 1969. The records of that company show that some time in 1970 Mr. Novaky owed $5.77 in interest due for 1970 which was not paid. The company capitalized this amount and added it to the principal debt. Mr. Novaky had not paid the interest due on his loans to Prudential for years prior to 1970. Mr. Novaky discontinued the policy in January or February of 1970 and received the cash surrender value of the policy net of the amount he owed in loan principal and interest. In April 1972, Leslie and Helen Novaky paid $1,000 when they entered a contract for the purchase of a personal residence. When in June or July 1972 they could not arrange financing, they forfeited the $1,000. The petitioners claimed a deduction for this $1,000 on their joint Federal income tax return for 1972, *62 describing it as "Dep. Lost to Dr. Bilderback." In his notice of deficiency to these petitioners, respondent disallowed this deduction. OPINION Issues 1, 2. Exemptions
Section 151[4] provides a deduction for an exemption for each "dependent" of a taxpayer. The amount of the deduction was $625 per dependent for calendar year 1970 and $750 per dependent for calendar year 1972. The term "dependent," as defined in section 152(a), includes a son or daughter of the taxpayer over half of whose support was received from the taxpayer during the relevant period. A special test is provided for determining who has provided over half of a child's support where, as here, support is received from parents who are divorced. For the calendar years 1970 and 1972, section 152(e) provided: Sec. 152(e). Support Test in Case of Child of Divorced Parents, Et Cetera.-- (1) General rule.--If-- (A) a child (as defined in section 151(e)(3)) receives over half of his support during the calendar year from *63 his parents who are divorced or legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement, and (B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year unless he is treated, under the provisions of paragraph (2), as having received over half of his support for such year from the other parent (referred to in this subsection as the parent not having custody). (2) Special rule.--The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if-- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to *64 any deduction allowable under section 151 for such child, and (ii) such parent not having custody provides at least $600 for the support of such child during the calendar year, or (B)(i) the parent not having custody provides $1,200 or more for the support of such child (or if there is more than one such child, $1,200 or more for all of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody. For purposes of this paragraph, amounts expended for the support of a child or children shall be treated as received from the parent not having custody to the extent that such parent provided amounts for such support. (3) Itemized statement required.--If a taxpayer claims that paragraph (2)(B) applies with respect to a child for a calendar year and the other parent claims that paragraph (2)(B)(i) is not satisfied or claims to have provided more for the support of such child during such calendar year than the taxpayer, each parent *65 shall be entitled to receive, under regulations to be prescribed by the Secretary or his delegate, an itemized statement of the expenditures upon which the other parent's claim of support is based. (4) Exception for multi-support agreement.--The provisions of this subsection shall not apply in any case where over half of the support of the child is treated as having been received from a taxpayer under the provisions of subsection (c). (5) Regulations.--The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this subsection. *66 Since Todd and Dana Novaky received all of their support from their parents and were in the custody of their mother, petitioner Barbara Swasey, for more than half of each of the calendar years in issue, the general rule of section 152(e)(1) would ordinarily treat Barbara Swasey as having contributed more than half of the support of each child during each of those years. Clearly, Leslie Novaky for the calendar years 1970 and 1972 does not fall within the special rule provided in section 152(e)(2)(A) that allows the noncustodial parent to be treated as having contributed over half of a child's support. The special rule of section 152(e)(2)(A) allows the noncustodial parent to be treated as having contributed over half of a child's support when the parent provides at least $600 for the child's support and when an appropriate document provides that the noncustodial parent is entitled to any deduction allowable under section 151. In the instant case there is no provision for allocation of the deduction in the decree of divorce. Nor is there any evidence that any such provision existed in *67 any written agreement between Leslie Novaky and Barbara Swasey applicable to the years 1970 and 1972. Therefore, section 152(e)(2)(A) is not applicable to Mr. Novaky in either 1970 or 1972.
The special rule of section 152(e)(2)(B) does not aid Mr. Novaky for the years 1970 and 1972. The record fails to show that Mr. Novaky, the noncustodial parent, provided the amount of $1,200 for the support of the children for 1970. While the record does show that Mr. Novaky provided over $1,200 for support for his children in 1972, [5] the record also clearly shows that Mrs. Swasey, the custodial parent, provided more for support of each of the children than did the noncustodial parent, Mr. Novaky, in that year. The parties have stipulated that Mr. Novaky provided $2,020 for support of the children in 1972. We have found that this amount was all that he provided. Mrs. Swasey made expenditures of $952.51 for items we have found to be solely for support of the children in 1972.The children's allocable *68 portion of food expenditures is $2,269.42 and the value of lodging furnished the children in 1972 was at least $2,500. Therefore, the total support of the children in 1972 was over $5,700. Since the $2,020 was clearly less than half of the support of the Novaky children in 1972, and all support of the children came from their parents in that year, Mr. Novaky is not entitled to exemptions for the children in 1972 under the special rule of section 152(e)(2)(B). We hold that Mr. Novaky is not entitled to a deduction for a dependency exemption for either of his two children in either 1970 or 1972. We hold that Mr. and Mrs. Swasey are entitled to a deduction for a dependency exemption for each of the two Novaky children in 1972. Issues 3, 4. Deductions Relating to S. Piatak, Inc.
On his return for 1970, Mr. Novaky claimed a deduction of $6,473.75 described only as "Business expense carryover #1045 1969." Although Mr. Novaky has made no attempt to explain this item on his 1970 return, it is apparent that it is the amount remaining from an asserted loss of $17,235 claimed on his 1969 return after offsetting that loss against the $10,761.25 of income he reported on the 1969 *69 return. The loss claimed on the 1969 return and carried forward to his 1970 return was computed from the operating income and deductions of the liquor store and bar during the period Mr. Novaky owned the stock of S. Piatak, Inc., from August 1968 to January 15, 1969. Assuming that this loss was actually incurred, it was incurred not by Mr. Novaky but by his wholly-owned corporation, S. Piatak, Inc. The parties have stipulated that S. Piatak, Inc. operated the liquor store and bar. The liquor license was held in its name, and state beverage tax reports were filed in its name. However, Mr. Novaky argues on brief that he "owned" the liquor store and that S. Piatak, Inc. was merely "the name on the liquor license." He apparently seeks to have the corporate entity disregarded [6] and its items of income and deduction attributed directly to him. *70 A corporate entity will not be disregarded for Federal tax purposes if it is created for business purposes or actually conducts business following incorporation. Moline Properties v. Commissioner, 319 U.S. 436 (1943). Furthermore, the degree of corporate purpose and activity required for recognition of its corporate entity is very low. Strong v. Commissioner, 66 T.C. 12, 24 (1976), affd. per curiam 553 F.2d 94 (2d Cir. 1977). Mr. Novaky has produced no evidence that the corporation carried on little or no activity aside from his unsupported statement that "it didn't operate as a corporation at any time as far as I -- while I owned it." However, on the contrary the record reflects that it held its liquor license in its own name, operated the liquor store and bar in its own right, filed reports in its own name and incurred liabilities and obligations to third parties. The fact that petitioner considered the liquor store and bar as his own company does not negate the corporation's existence or tax status under these circumstances. We find that S. Piatak, Inc. existed as a corporation *71 in 1968 and 1969 and that it is not to be disregarded for Federal tax purposes.Therefore, the loss reported by Mr. Novaky attributable to the business operations of the corporation is not allowable to Mr. Novaky personally. We sustain respondent's disallowance as a deduction of this $6,473.75 loss carryover claimed by Mr. Novaky in 1970. In addition to the $6,473.75 loss claimed by Mr. Novaky on his 1970 return, he claimed a loss of $20,800 that respondent disallowed in the notice of deficiency. The basis advanced by petitioner for deduction of this loss is the nonpayment of the $20,000 note he received in 1969 on sale of his S. Piatak, Inc. stock. However, to be deducted as a bad debt under section 166 the debt must have become worthless "within the taxable year" for which the deduction is taken. See Hearn v. Commissioner, 36 T.C. 672 (1961), affd. 309 F.2d 431 (9th Cir. 1962), cert. denied 373 U.S. 909 (1963). This record contains no evidence to show that the note in fact became worthless in 1970. Mr. Novaky received the demand note on *72 January 15, 1969. He attempted to collect on the note prior to July 1969, but the debtor stated he could not pay. Although petitioner threatened to "foreclose" at that time, he did not do so he said "because the corporation wasn't making any money." He delayed because he hoped the business would improve. Creditors of the corporation foreclosed on the business in July 1969. The corporation was placed in receivership in August 1969, and all of its assets were sold to satisfy creditors in November of 1969.Mr. Novaky has not known the whereabouts of the makers of the note since July 1969. They moved and left no forwarding address. Although Mr. Novaky stated that he made diligent efforts to locate the makers, all the record shows is that he went to their residence in Perth Amboy and learned that they had moved and left no forwarding address. The record does not show what the financial condition of the makers of the note was in 1970 or any other year, except that Mr. Novaky stated that he did not know of any property they had in New Jersey. He stated that they had come to New Jersey from New York. On this record, we find that Leslie Novaky has failed to prove that the $20,000 *73 note became worthless in 1970.Therefore, he is not entitled to a bad debt deduction for that amount in 1970. Furthermore, petitioner has neither advanced nor proved any other basis for deduction of the $20,800 amount claimed by him in 1970. On this record, we find that no part of this $20,800 amount is deductible in 1970. Leslie and Helen Novaky claimed a deduction on their 1972 Federal income tax return of $7,534.64, described as "Business loss" and "Carryover." They offered no evidence supporting this deduction or other explanation of it. Our previous discussion negates the only two sources of loss carryover possible on this record, the business loss claimed in 1969 from the liquor store operations and a loss on the sale of stock and receipt of the note in 1969. Since petitioners have failed to establish any basis for the claimed deduction in 1972, we hold that it is not allowable. Issues 5, 6. Miscellaneous Deductions
On his Federal income tax return for 1970, Leslie Novaky claimed deductions for charitable contributions and interest expense. Respondent disallowed the deductions because petitioner had failed to establish that the amounts claimed were expended for *74 the purposes stated. Respondent asserted no other basis for disallowance. At trial, petitioner testified that he contributed funds to St. Mary's Catholic Church and to various charities in 1970. He gave supportive testimony only regarding the church contributions, however. Based on his testimony of the frequency with which he attended church and of the amount of contributions he habitually made, we find that Leslie Novaky made contributions to the church of $150 in 1970 and that he is entitled to deduct that amount under section 170. The interest expense claimed by petitioner on his 1970 return was interest accrued on a loan from Prudential Insurance Company, a company with which petitioner had an insurance policy. Petitioner canceled the policy in 1970. The company applied the cash surrender value of the policy against the principal and accrued interest of the loan and gave petitioner the remaining amount. Section 163 allows petitioner, a cash basis taxpayer, a deduction for "all interest paid * * * within the taxable year on indebtedness." Since Mr. Novaky's assets were irrevocably *75 applied to payment of his interest obligation in 1970, we find that he paid interest on this indebtedness in that year. See Sherman v. Commissioner,18 T.C. 746, 753 (1952). Petitioner's proof of the amount of interest paid leaves much to be desired. Mr. Novaky stated that he did not recall that he had ever paid interest on the loan.However, neither the absolute amount of the accrued interest nor the amount of the loan, its interest rate and the period that interest was accrued is established with any certainty. Mr. Novaky did state that he thought the loan was around $3,000 and the interest rate was 5 percent. He finally stated that he believed he took out the loan in 1968. From these imprecise recollections of Mr. Novaky and the fact that in 1970 when the loan was outstanding for probably less than one month interest of $5.77 was accrued by Prudential on the loan, we conclude that at the time Mr. Novaky canceled the insurance policy and received the net cash surrender value he paid interest of at least $150 on the loan. Therefore, we find that Mr. Novaky is entitled to a deduction of this amount under section 163 for 1970. [7]
*76 On their joint Federal income tax return for 1972, Leslie and Helen Novaky deducted $1,000. They had paid this amount as a deposit when they contracted to purchase a personal residence, and they forfeited that amount when they could not arrange financing. Petitioners entered the contract only to purchase a personal residence. It is apparent that the loss of the $1,000 was not incurred in a trade or business, in any transaction entered into for profit or as a result of any casualty within the meaning of section 165(c)(3). Petitioners' loss is purely personal and therefore nondeductible. See section 165(c). Issue 7. Addition to tax under section 6653(a). Respondent has asserted an addition to tax under section 6653(a)[8] against petitioners Leslie and Helen Novaky for the year 1972. Our prior discussion establishes that there was an underpayment of tax by these petitioners in 1972.The only remaining issue is whether any part of this underpayment was due to negligence or intentional disregard of the rules and regulations by these petitioners. *77 Petitioners have shown little in the way of rationale for the claimed deductions that caused the underpayment in 1972. They offered no explanation at all of the $7,534.64 deduction. The return seems to indicate that it was considered a carryover from the losses claimed in earlier years relating to S. Piatak, Inc. However, if this is the case, the explanation would tend to establish the negligence of petitioners rather than negate it. Even if the full amounts originally claimed as losses and deductions in 1969 and 1970 had been available as deductions and carryovers to subsequent years with no carrybacks required, the carryover remaining for deduction after application in 1969, 1970 and 1971 would be less than that claimed. It would appear that Mr. and Mrs. Novaky simply claimed an unsubstantiated amount of carryover without any mathematical relationship to the amounts previously claimed as deductions. Respondent's determination that the underpayment in 1972 was due to negligence or intentional disregard of the rules and regulations is presumed correct. Petitioners have produced no evidence from which we could find that the underpayment was not due to these causes. Therefore, *78 we find that petitioners Leslie A. Novaky and Helen Novaky are liable for an addition to tax under section 6653(a) with respect to the underpayment for 1972. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Clyde Swasey and Barbara Swasey, docket No. 3893-76; and Leslie and Helen Novaky, docket No. 5251-76.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
*. Allocable solely to support of children.↩
*. Allocable solely to support of children.↩
3. In the Stipulation of Facts, this amount was erroneously stated to have been paid in 1970. However, the statement of moneys paid by Mr. Novaky for support of his children, maintained by the Middlesex County Probation Department, attached as an exhibit clearly shows the year as 1972.↩
4. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions.--In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * *
(e) Additional Exemption for Dependents.-- (1) In general.--An exemption of $750 for each dependent (as defined in section 152)-- (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $750, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. * * *
(3) Child defined.--For purposes of paragraph (1)(B), the term "child" means an individual who (within the meaning of section 152↩) is a son, stepson, daughter, or stepdaughter of the taxpayer.
5. For the years in issue, only a total of $1,200 was required to be contributed for the combined support of all children. Sec. 1.152-4(d)(3), Income Tax Regs.↩
6. The parties have stipulated that S. Piatak, Inc. was validly incorporated in 1965 and that its existence under state law was not terminated until 1971. Therefore, there is no question that the corporation existed under state law in 1968 and 1969. Cf. Stoody v. Commissioner,66 T.C. 710, 716-17↩ (1976).
7. Although we have held certain amounts deductible in 1970 under secs. 170 and 163, our holdings disallowing certain other claimed deductions may have reduced the amount of Mr. Novaky's itemized deductions below the standard deduction allowable to him in lieu of itemization. In their computations under Rule 155, the parties will make an appropriate adjustment.↩
8. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩