FOURTH FINANCIAL CORPORATION AND CONSOLIDATED SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fourth Financial Corp. v. Commissioner
Docket No. 25422-82.
United States Tax Court
T.C. Memo 1985-232; 1985 Tax Ct. Memo LEXIS 405; 49 T.C.M. (CCH) 1485; T.C.M. (RIA) 85232; May 13, 1985. Harvey R. Sorensen, and R. Douglas Reagan, for the petitioner. Dennis R. Onnen, and James T. Finlen, Jr., for the respondent. SWIFT
MEMORANDUM OPINION SWIFT, Judge: Respondent determined deficiencies in the consolidated Federal income tax liability of petitioner Fourth Financial Corporation ("Fourth Financial") and its 99.8-percent owned subsidiary, Fourth National Bank and Trust Company, (Fourth National Bank), for the year 1979 in the amount of $267,845. Respondent's motion to amend its answer was granted by the Court on January 10, 1984. In the amended answer, the amount of the deficiency determined by respondent was increased to $778,256. [1]
This case *407 was submitted fully stipulated pursuant to Rule 122. The stipulated facts are incorporated herein by this reference. After concessions the remaining issue to be decided is whether interest payments made by Fourth National Bank pursuant to a loan agreement are deductible in the year paid. Fourth Financial and Fourth National Bank maintained their principal places of business in Wichita, Kansas, at the time of filing the petition herein. They timely filed a consolidated Federal income tax return for 1979. The taxable income reported on the consolidated return was computed according to the cash receipts and disbursements method of accounting. The issue herein arises out of a loan agreement entered into on June 25, 1973, between Fourth National Bank and Continential Illinois National Bank and Trust Company of Chicago ("Continental Illinois Bank") in the principal amount of $10,000,000. Although interest payments were required under the loan agreement to be made annually, the principal amount of the loan was not due until June 25, 1981. Fourth National Bank's interest payments under the loan agreement were to be computed as follows: (1) During the first three years, at 110-percent *408 of the prime interest rate, [2] (2) during the subsequent two years, at 115-percent of the prime interest rate, and (3) during the last three years at 120-percent of the prime interest rate. According to the terms of the loan agreement, if certain conditions were satisfied, Fourth National Bank was to receive a reimbursement after June 25, 1981, of a portion of the interest payments that it had made to Continental Illinois Bank. [3] The amount of the interest to be reimbursed by Continental Illinois Bank (hereinafter referred to as "excess interest") was to be determined by comparing the total amount of the actual interest payments made by Fourth National Bank over the life of the loan with the total amount of interest payments that would have been made by Fourth National Bank if the interest rate had been 7 1/2-percent over the life of the loan. *409 One of the major conditions that had to be satisfied in order for Fourth National Bank to be entitled to receive a reimbursement of excess interest was that Fourth National Bank could not commit an "event of default." Events of default under the loan agreement were described to include, among others, the following: (1) Late payment by Fourth National Bank of interest or principal under the June 25, 1973, loan, (2) payments by Fourth National Bank of mortgage or lease obligations, or dividends, that were greater in amount than specified dollar limitations with respect thereto as set out in the loan agreement; or (3) the insolvency of Fourth National Bank. If an event of default was committed by Fourth National Bank, Continental Illinois Bank had the option to accelerate the payment of the note together with any accrued interest, thereby eliminating Fourth National Bank's possible reimbursement of excess interest. Interest payments under the June 25, 1973, loan agreement were made by Fourth National Bank and were deducted in the years paid as follows: Petitioner's Annual
Year
Interest Payments
1973
$ 448,287.72
1974
1,184,013.66
1975
895,746.59
1976
775,181.66
1977
771,275.83
1978
1,026,424.65
1979
1,481,342.46
1980
1,780,426.43
1981
1,300,621.45
TOTAL
$9,663,320.45
*410 As of December 31, 1979, (the taxable in question), Fourth National Bank had not committed an event of default. On December 30, 1980, however, Fourth National Bank notified Continental Illinois Bank that it had committed an event of default (namely, that it had exceeded the specified dollar limitation of $650,000 placed upon the amount of annual lease obligations Fourth National Bank could incur). Instead of accelerating the due date of the loan, Continental Illinois Bank agreed to amend the language of the loan agreement to increase the amount of annual lease obligations Fourth National Bank could incur to $1 million and to disregard the default. No further events of default were committed by Fourth National Bank with respect to the June 25, 1973, loan agreement. Fourth National Bank paid the $10,000,000 principal amount of the loan when it was due on June 25, 1981. Fourth National Bank in 1981 received from Continental Illinois Bank a reimbursement of excess interest in the amount of $3,663,320.45 pursuant to the modified loan agreement. That amount represented the difference between the amount of interest paid by Fourth National Bank over the life of the loan (namely, *411 $9,663,320.45) and the amount of interest that would have been paid (namely, $6,000,000) had the interest rate on the loan been computed at a rate of 7 1/2-percent. Fourth National Bank included the reimbursement in its taxable income in 1981. On July 22, 1982, respondent mailed a notice of deficiency to petitioner for 1979. Based upon respondent's understanding of the provisions of the loan agreement, respondent treated Fourth National Bank's interest rate under the loan agreement as if it had been 7 1/2-percent. In the notice of deficiency, respondent allowed Fourth National Bank to deduct annually all interest payments under the loan until the cumulative amount of all interest payments reached $6,000,000, which, as stated, represented the amount of interest that would have been paid over the life of the loan had the interest rate been 7 1/2-percent. Since cumulative interest payments under the loan reached $6,582,272.57 by the end of 1979, respondent disallowed $582,272.57 of the interest payments made in 1979 which represented the cumulative interest paid on the loan by the end of 1979 over $6,000,000. Respondent took the position that such excess interest represented nondeductible *412 contingent interest or capital expenditures and any reimbursements subsequently received would not be taxable income to petitioners. [4] Respondent acknowledges that if a default had occurred and if petitioner had forfeited its right to reimbursement of excess interest, excess interest paid would be deductible at that point in time. In his amended answer respondent sets forth a new primary position with respect to the excess interest. Respondent now contends that Fourth National Bank should have been permitted interest deductions in each of the years during the life of the loan for interest payments in an amount not greater than the amount that would have been paid in each year if Fourth National Bank had calculated its interest payments under the loan according to an interest rate of 7 1/2-percent. The total interest that would have been paid by petitioner at that rate in each year from June 25, 1973, through December 31, 1979, was $4,890,411, and respondent now asserts that the difference between that amount and the *413 total interest actually paid in each year through 1979 (namely, $6,582,272.57) should be disallowed in 1979. Accordingly, under respondent's new theory he has disallowed in 1979, $1,691,861.57 of the interest deductions claimed in 1979 and prior years by petitioner. Section 163(a)[5] provides for the deduction of interest that is paid within the taxable year.The proper year in which to account for deductions in computing taxable income is determined by the taxpayer's method of accounting. Section 461(a). Therefore for cash method taxpayers interest payments are generally allowed as deductions in computing taxable income in the year in which paid. Section 1.461-1(a)(1), Income Tax Regs.[6]
*414 As previously stated, respondent contends that interest payments made in each year by Fourth National Bank under the 1973 loan agreement there were based on an annual interest rate in excess of 7 1/2-percent represented nondeductible capital expenditures or contingent interest. This contention is based on his assumption that all of the events of default which Fourth National Bank was required to avoid in order to be entitled to receive reimbursement of excess interest were within the control of Fourth National Bank. Therefore, if Fourth National Bank wanted to receive the reimbursement of excess interest it would simply fulfill those obligations over which it had total control.Respondent also assumes that because the reimbursement was favorable to Fourth National Bank it would do whatever was necessary in order to receive the reimbursement, thereby making the reimbursement inevitable and not based on any meaningful contingencies. Implicit in respondent's contentions is his view that Fourth National Bank's treatment of its interest payments under the loan does not result in a clear reflection of income. Respondent additionally contends that an adjustment under section 481 is required *415 due to the fact that respondent proposes to change Fourth National Bank's method of accounting for interest deductions. According to respondent, the section 481 adjustment for the year 1979 should take into account interest deductions claimed by petitioner in years prior to 1979 which should have been disallowed. Petitioner argues that the interest payments were fully deductible in the years in which made. Petitioner argues that Fourth National Bank did not have an unconditional right to reimbursement, and that the contingencies on the right to reimbursement were real and substantial. Fourth National Bank would simply include in its taxable income any interest that was subsequently reimbursed to it in the year in which the reimbursement was received. Finally, petitioner argues that Fourth National Bank's treatment of interest payments under the loan resulted in a clear reflection of its income. For the reasons set forth below, we agree with petitioner. With respect to respondent's contention that interest payments by Fourth National Bank in excess of those that would have been paid using a 7 1/2-percent interest rate are not deductible, respondent relies principally on Charles Baloian Co. v. Commissioner,68 T.C. 620 (1977), *416 affd. per order (9th Cir. April 28, 1982). In that case an accrual method taxpayer with a taxable year ending June 30, 1971, was informed by a city agency that it might have a right to reimbursement for moving expenses incurred during its 1971 taxable year and deducted on its 1971 Federal income tax return. As early as May 20, 1971, the city agency had agreed to reimburse the taxpayer for the amount of moving expenses, and the taxpayer received the reimbursement on January 17, 1972. The Court disallowed the deduction claimed on the 1971 tax return because the taxpayer had a fixed right to reimbursement of the moving expenses at the end of the year in which the expenses were claimed. Two of our prior opinions concerning interest payments that were subject to a right to reimbursement are more on point. In Sherman v. Commissioner,18 T.C. 746, 753 (1952), a cash basis taxpayer paid interest at a 6-percent rate but subsequently claimed that she only was obligated to pay interest at a 2-percent rate. Respondent argued that petitioner for tax purposes only should be allowed to deduct interest at a 2-percent rate because in a subsequent taxable year the Federal Deposit *417 Insurance Corporation agreed with the taxpayer and made the downward adjustment in the interest rate. The Court found this latter fact irrelevant because it occurred after the taxable year in which the taxpayer paid the interest at a 6-percent rate. As of the end of the year, the taxpayer did not know whether she had a right to reimbursement or what the amount of the potential reimbursement would be. Accordingly, the Court held that the taxpayer was permitted to deduct the interest in the year paid. In Stevens Bros. Foundation, Inc. v. Commissioner,39 T.C. 93 (1962), revd. on another issue 324 F.2d 633 (8th Cir. 1963), the cash basis taxpayer paid interest in 1950. It was subsequently determined that some of the interest had been paid in error and that the taxpayer would be reimbursed therefor, although reimbursement had not yet been received. The Court held that the taxpayer's interest payments were deductible and noted that "[e]ven if [the taxpayer] had been repaid after the end of its taxable year 1950, its 1950 deductions would not be affected by this repayment * * * [and] should not be affected by a mere hope or expectation of repayment. *418 " 39 T.C. at 125-126. Accordingly, under this line of authority, in order for an otherwise proper deduction to be disallowed, the taxpayer must be assured of both the right to reimbursement and the amount of the reimbursement. See also Electric Tachometer Corporation v. Commissioner,37 T.C. 158, 162 (1961). Fourth National Bank deducted interest for the year in which paid under the terms of the loan and pursuant to the rules of its method of accounting. As of December 31, 1979, Fourth National Bank did not have a fixed right to reimbursement because all of the contingencies regarding the reimbursement had not been satisfied. In fact, during 1980, Fourth National Bank committed an event of default.If Continental Illinois Bank had not voluntarily amended the provisions of the loan agreement, Fourth National Bank would not have been entitled to receive the reimbursement. Further, respondent's assumption that all of the events of default were within Fourth National Bank's control is not well reasoned. Fourth National Bank had no more control over securing funds in order to make interest payments under the terms of the loan than it had over each of *419 its depositors and other investors in the various financial instruments it offered to customers. Furthermore, economic conditions over which Fourth National Bank had little control might have changed and made it impossible for Fourth National Bank to honor all of the terms of the loan. In addition, respondent's assumption that the amount of the reimbursement was so favorable to Fourth National Bank that it would have done anything to receive the reimbursement ignores reality. Companies throughout the country must constantly evaluate and reevaluate how best to use their assets and resources so as to maximize profits. As a result, although a particular investment or loan may today appear most favorable, that same investment or loan may subsequently be determined to be unwise and an abandonment of that investment may be in the best interest of the company. Respondent also refers generally to his broad authority under section 446(b) and respondent cites section 461(g) and Rev. Rul. 83-84, 1983-1 C.B. 97, in support of his contention that a portion of Fourth National Bank's interest payments represented nondeductible capital expenditures. Section 461(g), however, is *420 not relevant because we are not concerned herein with prepaid interest but with interest currently due. Rev. Rul. 83-84, supra, deals with the deductibility of interest payments where the loan itself requires interest payments to be computed according to the "Rule of 78's." The loan in question did not involve the computation of interest under the "Rule of 78's" and therefore Rev. Rul. 83-84, is not applicable. Respondent's general reliance on section 446(b) is simply inadequate authority on which to base the adjustments made herein on the facts of this case. Based upon our analysis, we conclude that Fourth National Bank's interest payments under the June 25, 1973, loan agreement with Continental Illinois Bank are deductible in the year made. No distortion of income resulted therefrom and no section 481 adjustment is appropriate. To reflect the foregoing and other concessions, Decision will be entered under Rule 155.
Footnotes
1. According to Rule 142(a)↩, respondent bears the burden of proof as to the amount of the increased deficiency. All rule references are to the Tax Court Rules of Practice and Procedure.
2. The prime interest rate was defined in the loan agreement as the rate of interest Continental Illinois Bank charged to its most creditworthy borrowers on 90-day loans made at its Chicago, Illinois, office during the years in which the loan was outstanding.↩
3. The pertinent language with respect to Fourth National Bank's potential reimbursement of a portion of the interest payments is contained within Exhibit A of the loan agreement as follows: [I]n the event that the aggregate amount of interest received by the Lender [Continental Illinois Bank] hereunder for the period from the date hereof to maturity exceeds the aggregate amount of interest which would have been received by the Lender hereunder if interest hereon had been calculated at the rate of 7-1/2% per annum for such period, the Lender will pay to the Bank [Fourth National Bank] promptly after payment in full of this Note the amount of such excess, and provided,further,↩ that no such payment shall be made by the Lender to the Bank (a) with respect to any amount of principal hereof prepaid prior to maturity, (b) if the maturity hereof is accelerated by reason of an event of default under the Agreement (as hereinafter defined), or (c) payment of this Note is made, in whole or in part, after maturity.
4. Although not before us, we assume respondent has disallowed the interest deductions claimed with respect to the loan in 1980 and 1981 on the same theory.↩
5. All section references are to the Internal Revenue Code of 1954, as in effect during 1979. Section 163(a) provides as follows: General Rule.--There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. ↩
6. The pertinent portion of section 1.461-1(a)(1), Income Tax Regs., provides as follows: (a) General Rule--(1) Taxpayer using cash receipts and disbursements method. Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid. * * * If an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made.↩