CENTURY MOTOR COACH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Century Motor Coach v. Commissioner
Docket No. 27534-92
United States Tax Court
T.C. Memo 1995-276; 1995 Tax Ct. Memo LEXIS 275; 69 T.C.M. (CCH) 2959; June 21, 1995, Filed *275 Decision will be entered for respondent. For petitioner: E. Spencer Walton, Jr. For respondent: Ronald Jordan. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in Federal income taxes in the amount of $ 86,542 for petitioner's tax year ending August 31, 1983. The only matter now in controversy is a claimed $ 184,439 bad debt deduction under section 166[1] in petitioner's fiscal year ending August 31, 1986, which is relevant only by reason of a carryback to petitioner's fiscal year 1983. Petitioner, Century Motor Coach, Inc., an Indiana corporation, was in the business of producing noncommercial customized conversion vans. At the time of the filing of the petition in this case, its legal address was in South Bend, Indiana. On August 31, 1986, petitioner sold and shipped 11 customized *276 conversion vans to Hurst Lincoln Mercury, Inc. (Hurst). The sale price for the 11 vans was $ 184,449.05, and the terms of the sale were cash on delivery. Petitioner reported the $ 184,449.05 sale on its Federal income tax return for its fiscal year ended August 31, 1986. On September 5, 1986, Hurst delivered five checks to petitioner representing payment in full for the sale price of the 11 vehicles. Petitioner's president, James Maxey, deposited the checks, but they were returned due to insufficient funds in Hurst's account. On September 15, 1986, petitioner's president hand delivered a letter to Hurst demanding the return of 10 of the vehicles or payment in full of the entire sale price. Except for an inconclusive footnote in the stipulation reproduced below, [2] petitioner has not explained what happened to the 11th vehicle. *277 On October 21, 1986, Hurst commenced a chapter 11 bankruptcy proceeding in the U.S. Bankruptcy Court for the Southern District of Ohio. On November 4, 1986, petitioner commenced an adversary proceeding in the Bankruptcy Court demanding the return of the vehicles sold to Hurst or judgment for the amount of the sale price. At that time, General Motors Acceptance Corp. (GMAC) claimed a security interest in the vehicles and was included as a defendant in the action. In its complaint filed with the Bankruptcy Court, petitioner stated that it "did not know of the insolvency of Hurst Lincoln-Mercury, Inc. when it received [delivered?] said goods." On November 17, 1986, petitioner filed its Federal income tax return for its fiscal year ended August 31, 1986, and claimed a bad debt deduction in the amount of $ 184,439 [3] due to Hurst's failure to pay the sale price for the conversion vans. Beginning with the next taxable period subsequent to August 31, 1986, petitioner elected to be taxed as a subchapter S corporation. *278 On December 3, 1986, the Bankruptcy Court entered an order requiring Hurst to return five of the vehicles. On December 5, 1986, petitioner sold the five returned vehicles to Ivan Ganrud Chevrolet. The remaining five vehicles were sold by Hurst. Again, petitioner has provided no explanation for the disposition of the 11th vehicle. On August 6, 1987, the adversary proceeding was dismissed. Pursuant to the settlement of the parties, GMAC agreed to pay petitioner $ 7,000, and petitioner received the sale proceeds from one of the vehicles in the amount of $ 10,665. The balance of petitioner's claim in the bankruptcy proceeding, less the $ 7,000 paid by GMAC, was given the status of an administrative priority claim. Petitioner received no distribution via the bankruptcy proceeding on its administrative priority claim. Section 166(a)(1) provides that "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." Petitioner bears the burden of proving each necessary element of a deduction under Rule 142(a). In the present case, that burden includes proving the debt at issue became worthless and that it became worthless during the year at issue. *279 We note that petitioner did not seek a deduction under section 166(a)(2) for a partially worthless debt. Petitioner deducted the entire amount of the debt and proceeded under section 166(a)(1). Accordingly, petitioner must prove that the debt was wholly worthless in the year at issue. Moreover, unlike the section 166(a)(1) deduction for a wholly worthless debt, the section 166(a)(2) deduction for a partially worthless debt is limited to the part "charged off within the taxable year," and there is nothing in the record showing that there was any chargeoff within petitioner's fiscal year ending August 31, 1986, or within any subsequent year or taxable period. Whether a debt is worthless is a question of fact to be answered in light of the evidence presented. As this Court has previously stated: "There is no standard test or formula for determining worthlessness within a given taxable year; the determination must depend upon the particular facts and circumstances of the case." Crown v. Commissioner, 77 T.C. 582, 598 (1981) (citation omitted). Petitioner has failed to establish that the debt at issue became wholly worthless. To the contrary, the *280 record shows that petitioner regained possession of five of the vehicles, which were later sold to Ivan Ganrud Chevrolet. Further, petitioner received $ 7,000 from GMAC and the sale proceeds from one of the remaining vehicles in the amount of $ 10,665. While each of these events took place after the close of petitioner's fiscal year 1986, we think they are properly considered as evidence of the continuing value (albeit a diminished value) of the debt at issue. As stated previously in this area, "it is not uncommon to take cognizance of subsequent events in confirming whether a debt becomes worthless in a particular year." Id. at 600. Petitioner relies on several cases and section 1.166-2(c), Income Tax Regs., which state that bankruptcy can be an indication of the worthlessness of a debt. [4] Bankruptcy in and of itself, however, operates only as a general indication. "Bankruptcy is generally an indication of the worthlessness of at least part of an unsecured and unpreferred debt, but the burden is on the petitioner to show that there was at that time no reasonable or practical basis for hope that he would receive any return on his loans." Schultz v. Commissioner, 30 T.C. 256, 270 (1958), *281 revd. and remanded on another issue 278 F.2d 927 (5th Cir. 1960) (emphasis supplied); [5] see also Lieberfarb v. Commissioner, 60 T.C. 350, 355-356 (1973). In light of the fact that petitioner recovered 5 of the 11 vehicles sold and over $ 17,000 in cash, Hurst's bankruptcy is not enough to prove the entire debt was worthless.
*282 Having decided that petitioner failed to prove the debt at issue was worthless, we pause briefly to point out that petitioner also failed to prove that the alleged worthlessness of the debt occurred in the year at issue. The sale at issue occurred on August 31, 1986, the last day of petitioner's taxable year. It would indeed put a strain on our credibility to conclude that the debt became worthless virtually the same moment that petitioner made the sale. Certainly, there is nothing in the record even to suggest that worthlessness occurred between the moment of sale and midnight. It has long been recognized that "The date of worthlessness is fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope [of recovery] for the future." Dallmeyer v. Commissioner, 14 T.C. 1282, 1291-1292 (1950). Petitioner has pointed to various indicia of worthlessness (e.g., Hurst's failure to pay, Hurst's commencement of a bankruptcy proceeding [6]), but each of these indicia occurred during the following tax year. They provide no support for a deduction in the year in issue. In fact, in its complaint filed with the Bankruptcy *283 Court, petitioner stated that it "did not know of the insolvency of Hurst Lincoln-Mercury, Inc. when it received [delivered?] said goods" on the last day of its tax year. Petitioner has failed to prove it is entitled to the deduction at issue. Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Stipulation number 10, fn. 1, provides as follows: The September 15, 1986 demand letter of James Maxey lists only 10 vehicles. The total amount due listed in the letter is $ 184,439.05, while the sum of the sales prices listed for the 10 vehicles equals $ 158,894.49. The reason for the omission of the 11th vehicle is unknown. However, reconciliation between petitioner's sales records and the vehicle identification numbers listed in the memo section of the five checks delivered by Hurst indicates that one of the eleven vehicles, vehicle no. C30081, may not have been shipped to Hurst. Vehicle C30081 is listed on check no. 1327. In addition, this vehicle number is listed in the sales records of petitioner, Exhibit 8-H, as having been shipped to Perry Thompson Ford on October 24, 1986.↩
3. The difference of $ 10.05 between the stipulated sales price ($ 184,449.05) and the stipulated amount of the claimed bad debt deduction ($ 184,439) is not explained in the record.↩
4. Sec. 1.166-2(c), Income Tax Regs., states: (c) Bankruptcy. -- (1) General rule. Bankruptcy is generally an indication of the worthlessness of at least part of an unsecured and unpreferred debt. (2) Year of deduction. In bankruptcy cases a debt may become worthless before settlement in some instances; and in others, only when a settlement in bankruptcy has been reached. In either case, the mere fact that bankruptcy proceedings instituted against the debtor are terminated in a later year, thereby confirming the conclusion that the debt is worthless, shall not authorize the shifting of the deduction under section 166↩ to such later year.
5. Moreover, since the bankruptcy proceeding here was under chapter 11, which usually looks towards the rehabilitation of the debtor, a claim of total worthlessness to the extent that it is based on such proceeding is weak indeed.↩
6. See supra↩ note 5.